Commonwealth *v.* Stewart, Appellant.

Argued July 12, 1932.

Before TREXLER, P. J., KELLER, GAWTHROP, CUNNINGHAM, BALDRIGE, STADTFELD and PARKER, JJ.

*Charles J. Margiotti,* and with him *John E. Evans* and *R. M. McWade,* for appellant.

*J. E. Kalson,* Assistant District Attorney, and with him *Andrew T. Park,* District Attorney, for appellee.

OPINION BY GAWTHROP, J., October 10, 1932:

Appellant was tried and convicted in the court of oyer and terminer of Allegheny County on charges of rape, assault and battery with intent to commit rape, and adultery. His motion for a new trial being refused, he was sentenced on each indictment to undergo imprisonment in the Allegheny County Work House, the sentences to run concurrently.

The material facts are as follows: Janet Knight and Isabelle Stuart, aged sixteen and seventeen years respectively, and residing at Defiance, Bedford County, Pennsylvania, decided to make a trip by hitch-hiking to Cleveland, Ohio. On the morning of January 22nd, when they had arrived at the outskirts of Pittsburgh, they were overtaken by a delivery truck occupied by two men, the operator being one Plunkett. The girls entered the truck and rode around Pittsburgh in it, while these men were delivering goods, until 5 P. M., when they were driven to the garage where the truck was kept. After waiting there until about six o'clock the girls got into a sedan with three truck drivers, Plunkett, Burns and Kessler, and Stewart, appellant. At that time Stewart was an automobile mechanic and had charge of the garage. Kessler drove the party to a speakeasy in which they all remained for an hour or more. The girls then left the speakeasy and went

for an automobile ride with Burns and Kessler. Appellant and Plunkett remained at the speakeasy. The girls and Burns and Kessler returned to the speakeasy about 10:30 o'clock. According to the testimony of the girls, Kessler and Burns then promised to take them to a girl's house to spend the night, but they found they had been returned to the garage shortly before midnight. It was raining then and their companions told them to go in out of the rain. Janet Knight testified: "We heard John Stewart and Tom Plunkett coming and John Stewart started to swear and ask where we were because we left the mooney joint without him; they was hunting for us ...... We got scared and got around in back of one of the trucks there and Tom Plunkett seen our heads whenever we got around the truck and ...... he lifted me out of the truck and took me to where John Stewart was standing and he said he could get John Stewart to leave us stay there that night if we would give in to these men." The witness described in great detail how Stewart and Plunkett had intercourse with her forcibly and against her will. She testified further that her companion heard her scream and knocked the bar from the door and ran for the police and that she heard Stewart say that "he bet Isabelle had run for the police;" that he only roomed about a block from the garage; that "he was going to lock up so if the police come they couldn't get in because they had been wanting that place;" and that when the police came Stewart was gone. Isabelle Stuart corroborated her testimony, testifying that appellant "told us what he would give us if we would give in;" that she heard Janet Knight screaming; and that she escaped from the garage and ran for the police. Both girls testified that they were not mistreated at any time by anybody but Plunkett and appellant. Appellant, who is a married man forty-one years of age, testified that he and Plunkett left the speakeasy about midnight and

arrived at the garage shortly after midnight; that Plunkett intended to spend the night there; that he (appellant) found Burns and the two girls there; and that he left the garage about 12:30 o'clock and went home. He denied that he was guilty of any assault whatever on either one of the girls. Appellant's wife testified that he arrived home at 12:45 in the morning and told her that he left Burns and Plunkett and the two girls in the garage.

The principal ground urged for reversal is the failure of the trial judge to instruct the jury as to the quantum of proof required to establish an alibi. As stated by this court in Com. v. Gutshall, 22 Pa. Superior Ct. 269, 271, "when an accused resorts to this defense, which is affirmative in its nature, the evidence must cover the time when the offense is shown to have been committed, so as to preclude the possibility of the prisoner's presence at the time and place of the crime ...... The facts, established by the evidence in support of this defense, must make it impossible that the defendant could have been present at the commission of the crime. When the evidence, if believed, does not establish such facts, the accused derives no benefit from it upon that particular branch of his defense, but it still remains in the case for all other purposes." After a painstaking examination of the entire record, with a full realization of the seriousness of the result of the conviction to appellant, we are fully convinced that the defendant's proofs did not tend to establish an alibi. In addition to this, the trial judge states in his opinion that "not a word was said by defendant's counsel in either his opening or closing address to the jury about an alibi," and that "the sole defense was that the defendant had remonstrated with the other men for taking the girls to the garage, had first ordered them out, but later relented and permitted them to sleep there, but did not participate in any of the offenses complained of." We must accept this state-

ment as verity. And then, the record shows that defendant's able and experienced counsel did not ask for any instructions on the defense of an alibi when he was asked by the court if he wished any further instructions. In such circumstances a trial judge is not to be impaled upon the rule of law that "the defendant has a right, even though no request was made for the instruction, to have the jury fully advised as to the difference between the burden resting upon the Commonwealth to establish guilt, and that resting on the defendant with respect to the alibi set up." (Com. v. Stein, 305 Pa. 567, 571). The Stein case does not rule this case because the cases are radically different in their facts. In that case the defense was clearly that of an alibi. The facts established by the evidence offered in support of the alibi defense, if accepted as true, made it impossible for the defendant to have been present at the commission of the crime. In the present case, on defendant's own testimony, he was in or about the garage at a time sufficiently long for him to have done everything that the witnesses for the prosecution testified that he did. Our conclusion is that on the record made it was not error for the trial judge to omit instructing the jury as to the quantum of proof required to establish an alibi. In our view the defense of an alibi was not in the case and, therefore, the trial judge would have been justified in refusing to instruct the jury on that subject if he had been requested to do so.

The next complaint made in behalf of appellant relates to the charge. It is urged that it tended to influence the jury against the defendant, did not refer to the evidence favorable to him, but reviewed the testimony of the Commonwealth in a manner favorable to it. In the light of these criticisms we have studied the charge, but have been unable to find any merit in them. We are of one mind that the charge fairly and adequately presented the contentions of

the Commonwealth and appellant and made sufficient reference to the evidence to assist the jury in appreciating its bearing, without giving any indication of the opinion of the trial judge in the case. Further discussion of this subject would be superfluous.

The only other ground for reversal urged in appellant's brief is that error was committed in permitting the Commonwealth to prove by a medical witness that he made a vaginal examination of Isabelle Stuart and found that her hymen had not been ruptured. As the defendant was not charged with having had carnal communication with this witness, the testimony was irrelevant and immaterial. But we are of opinion that its admission was at most harmless error and in no way prejudiced the defendant. Therefore, we would not be warranted in reversing on this ground. We are persuaded that the defendant had a fair trial and find no justification for interfering with the sentences imposed on the verdicts.

In each appeal the judgment is affirmed.