Commonwealth *v.* Russell, Appellant.

Argued April 20, 1942.

Before KELLER, P. J., CUNNINGHAM, BALD-
RIGE, RHODES, HIRT and KENWORTHEY, JJ.

*B. A. Sciotto,* with him *Richard W. Lins,* for appellant.

*Paul A. Koontz,* District Attorney, with him *B. F. Madore,* for appellee.

OPINION BY KELLER, P. J., July 23, 1942:

The defendant, Albert Russell, Sr., has appealed from his conviction and sentence on an indictment charging him with being an accessory before the fact (1) to the wanton, malicious and felonious damage done to a *road roller,* belonging to Girard Construction Company, by the explosion, on February 26, 1939, of

dynamite placed upon it by his counsel and command; and (2) to an attempt likewise to damage a *power shovel,* belonging to said company, by dynamite. (Act of April 20, 1927, P. L. 326, amending sec. 141 of the Criminal Code of March 31, 1860, P. L. 382). The verdict was a general one of 'guilty'.

The indictment contained four counts. The first and second charged respectively that the defendant had counseled, hired and commanded one Willie Cooke to commit a felony (1) by the explosion of dynamite placed by him upon said road roller, and (2) by an attempt to damage said power shovel by placing dynamite upon it. The third and fourth counts were drawn in accordance with section 44 of the Criminal Procedure Act of March 31, 1860, P. L. 427, and section 1105—which is procedural in character—of the Penal Code of 1939, P. L. 872. Said acts provide, in substance, that every accessory before the fact to a felony may be *indicted,* tried, convicted and punished, *as if he were the principal felon.* These counts were added, no doubt, out of extra caution, and respectively charged, as above provided, that the defendant had feloniously, etc., (3) damaged the said road roller by the explosion of dynamite placed by him upon it, and (4) attempted to damage said power shovel by placing dynamite upon it.

They were in accord with the provisions of the said statutes and furnished no ground for either quashing the indictment or arresting the judgment [Assignments 10 and 11]. Only one sentence was imposed and it was within the limit fixed by the applicable statutes.

The testimony produced by the Commonwealth, if believed by the jury, supported the following statement of facts:

The Commonwealth of Pennsylvania, through a recognized authority or agency, was engaged in the building of a "super highway", which by tunnels under a number of mountains, constitutes an almost straight and level highway from a point near Carlisle, Pa., westward for

160 miles. To hasten the work it let out the construction of the road by sections to a number of contractors. Girard Construction Company, Inc., a Pennsylvania corporation, of which Joseph Ciccone was president, was awarded the contracts for two sections of the road in Bedford County, between Mann's Choice and New Baltimore. The contractor was able to get much, if not all, of the common labor required for the work from the immediate neighborhood.

The defendant, Russell, was president of Local Union No. 508, of Johnstown, Pa., of the International Hod Carriers, Building and Common Laborer's Union of America. He endeavored to "unionize" the labor employed on the Bedford County sections of the new highway and consulted Mr. Ciccone with that end in view. The latter told him that he was willing, if the men employed desired to join the union. And, in order that the matter might be placed before the workmen, a meeting of the laborers was called at which opportunity was given the labor union to present their case. But the laborers, whose employment was only for this particular job, apparently could not see the advantage of paying the necessary initiation fee ($10 or $15 apiece) and dues ($2 per month each) and voted against joining the union. Thereupon the defendant, accompanied by a Mr. White from Philadelphia and a man from Pittsburgh, (who, *defendant's counsel suggested,* was Nick Stirone),[1] came to see Ciccone, at the latter's office at Mann's Choice, and said: "We don't want these guys, you are the guy we want. We want *you* to sign. If you sign we will get you the men." Mr. Ciccone said: "No sir, I got these men. I am satisfied with the men.

---

[1] Defendant, in his testimony, denied that this man was Nick Stirone, general representative of the International Hod Carriers, Building and Common Laborer's Union of America. He said, "Nick Stirone—I tell you to my knowledge Nick Stirone never *went on a job.* He told me and the other assistants to tell the *contractor* to come to *his* office." (p. 175).

Why should I look for trouble. I am satisfied. I don't know why I should join the Union when these men don't want to." Then Mr. Russell said, "If you don't join the Union, we are going to give you trouble." [See *Com. v. Kelson*, 134 Pa. Superior Ct. 132, 137, 3 A. 2d 933]. Two or three weeks thereafter, in the early morning of February 26, 1939, the road roller was blown up by dynamite, and sticks of dynamite were found on the power shovel motor, unexploded because the fuse used to explode them was too short.

It was shown that a man named David Wise, who had been trying to get a job from Russell, had been directed by the latter to purchase some dynamite and give it to two young colored men, Willie Cooke and Arthur Stewart, who, Russell said, would know what to do with it. Wise testified that after Russell had told him to buy the dynamite, "He told me he wanted me to take the boys over and show them the machinery on the construction job; 'All I want you to do is take them over and bring them back, they will do the rest.'" Wise bought the dynamite at Hornick's hardware store in Cambria City, and also bought some cigarette lighters, which Russell suggested should be used to light the dynamite fuse, as they would not go out as soon as a match and don't flare up like a match—"it is easier to conceal the flame". He got six sticks of dynamite, six caps and 15 feet of fuse, put it in the front of the car, in which Cooke and Stewart were traveling with him on their way back from the construction job where he had shown them the machinery. He met Russell and gave him the sales slip or receipt for the dynamite, etc., the money for which had been given him by Miss Mary Miller, an employee of the Central Labor Union Board, of which Mr. Russell was also business manager. He told of taking Cooke and Stewart in his car over to the construction job late on Saturday night, February 25th, and giving them the dynamite, etc., after which they fixed it ready for the job. He

left Cooke and Stewart out of the car at one side of a little red bridge close to the office of the Girard Construction Company at Mann's Choice, not far from where the road roller and power shovel were, at about midnight, and later picked them up on the other side of the bridge. He himself did not hear any explosion, but Willie Cooke said he did. He drove them up to the Lincoln Highway and then off to Johnstown and left them there about 1:30 A.M. Sunday morning, February 26th, and went home. On Monday morning he went back to the office of the Central Labor Union and saw Russell. He (Russell) was talking to the two colored boys. They went out into the hallway, and when Russell came back he said that he had sent the two boys down to Nick [Stirone] at Pittsburgh and that he (Wise) had better go home and lay low for a couple of days, as the State Police might be in to investigate, and they might trip him up, "and we will all get to jail". He promised to send money down to Wise that afternoon, and "There will be more here for you". That afternoon by the hand of Elwood Brown, who was business agent for the Building and Construction Trades Council, whose headquarters were located in the same building as the Central Labor Union, Wise said he received an envelope, which contained $18. Brown, called as a witness by *defendant,* admitted having taken an envelope, supposed to contain money, to Wise, but did not know how much was in it. Brown also said that Russell had told him to tell Wise that he would get in touch with him—to stick around the house until he would get in touch with him.

Further details are not necessary. Wise admitted having pleaded guilty to an indictment charging him with complicity in the crime.

Willie Cooke testified he had lived in Johnstown for five years and knew the defendant, Russell; that he was a member of Local No. 508, of which Russell was president; that the defendant left word for him to come

332

to his office on Monday, February 20, 1939; that he went there as directed and saw the defendant who told him to get Arthur Stewart, that he had some dynamiting to do; "the man wouldn't come in the Union and he wanted to make him come in"; that he got Stewart and they both saw Russell, who told them he wanted them to go with David Wise over to look at the machinery he wanted them to dynamite; two bull-dozers and a new shovel—"If you can't get all, get the shovel and road roller". Wise took them over in his car on Friday, February 24th, to Bedford County where they looked over the machinery, and on the way back Wise bought some dynamite at a Cambria City hardware store and gave the sales slip to the defendant when they got back to Bedford Street, Johnstown; that on Saturday night, February 25th, David Wise took him and Stewart over to Bedford County, where they had been the day before. On the way over they stopped and fixed the dynamite. "Took and split the dynamite and took the caps and closed them. I think the fuse was 20 inches, fixed the next I think 18 inches and the third was 12 inches ...... to give us a chance to get away before any would go off, to give them all the same time to go off." Cooke took four sticks of dynamite and Stewart took two. "After we got to where we were supposed to put the dynamite, the bull-dozer was gone, so I put four sticks on the shovel and Stewart put two on the roller", which was about twenty feet away from the shovel. "He [Stewart] lit the two shortest, the 12 inch fuse ...... right on top of the motor ...... of the roller". Then they went back and got in the car. He, Cooke, heard the explosion, so they left and went back to Johnstown. He saw Russell on the following Monday morning. When he first got there Russell wasn't present, but his secretary [Miss Miller] gave him an envelope. He got Stewart and they both came back and saw Russell, who had come by that time. Russell gave Cooke a large envelope and told him and Stewart

to go to Pittsburgh "until everything blows over"; and. "I will let you know. You take this [envelope] to Nick Stirone." Cooke opened the envelope Miss Miller had given him, which contained $40, and divided it equally with Stewart. They both went to Pittsburgh to the Law Bulletin Building, asked to see Mr. Stirone, and gave him the envelope Russell had given them to deliver to Stirone; that Stirone got them a room, and a job, and gave them each $20, as they had to pay their room rent in advance; that Russell came to see them in Pittsburgh several times and told them to stay there until he let them know when they should come back; that after a while the defendant told him "everything was okay"—to come on back, and he came by train to Johnstown. Stewart did not come back with him and he has not seen him for a long time and doesn't know where he is.

Miss Miller testified that she knew Wise and Cooke; that Local Union No. 508, of which Russell was president, during January, February and March, 1939, and for a few weeks in April, transacted their business in the same office in which she worked; that she remembered handing Cooke an envelope which had been left with her for him by Russell, and that thereafter Cooke left for Pittsburgh from where a request was made that his 'travel card' be sent him. She did not remember seeing Willie Cooke after she *heard of the explosion,* and could not tell how long after that she "received a request from Mr. Stirone's organization for traveling cards [for Cooke and Stewart]".

The defendant denied that he had threatened to make trouble for Mr. Ciccone unless he joined the union; denied the testimony of Wise and Cooke, gave explanations as to the money he admitted he had given them, and endeavored to shift the blame for this dynamiting from his own shoulders to Nick Stirone's, who, he claimed had employed Cooke and Stewart to

do the job and frame it on him; and suggested that Mary Miller was a co-conspirator with Stirone, of which, as a fact, there was no proof at all. He told a story of how Stirone had threatened to have Miss Miller killed and frame it on him, Russell, and of various other illegal activities of Stirone along the lines of this prosecution. This testimony, while it might be useful to one interested in examining into Stirone's activities along the same line, did not tend to relieve the defendant from complicity in the crime under consideration.

We have gone thus fully into the testimony in order to show, that, if believed by the jury, there was clear, convincing and satisfactory evidence, sufficient to take the case to the jury and sustain the verdict of guilty [Assignment 5]. See also, *Com. v. Heller,* 147 Pa. Superior Ct. 68, 81-83, 24 A. 2d 460; *Com. v. Sonis,* 81 Pa. Superior Ct. 205, 210, 211. There was more evidence that we have not felt it was necessary to refer to.

We will now discuss the other matters raised by appellant in his *Statement of Questions Involved,* which limits the scope of our consideration of his appeal.

1. Appellant's counsel contends that the judgment must be reversed because the court in its charge failed to instruct the jury as to the quantum of proof necessary to establish an alibi. [Assignments 1 and 14]. This is evidently an afterthought, induced by a reading of *Com. v. Stein,* 305 Pa. 567, 158 A. 563. That case does not apply in the circumstances here present. The defense in the present case was not strictly an alibi. The word was not mentioned in the course of the trial, or in the points submitted by defendant's counsel.

An 'alibi', in criminal law, is a defense in which defendant shows *he* was at another place at the time the crime charged was committed. 2 C. J. 1033. "As used in the criminal law it indicates that line of proof by which the defendant undertakes to show that he did not commit, and could not have committed, the crime

charged because *he* was not at the scene of the crime at the time of its commission". (15 Am. Jur., p. 14, sec. 314).

No one contended that the defendant personally dynamited the road roller; the charge was that he counseled, hired and commanded Willie Cooke to do it—was an accessory before the fact. His crime, if committed by him, extended over a period of nearly a week and took place largely in his own office, where he admittedly was present a considerable part of that time. His defense was not that *he* was not present in and about his office, and the building in which it was located, during that week—for he admitted he was—but that *Wise and Cooke and Stewart* did not see and converse with him there about this dynamiting. Hence, his defense was not an alibi, but rather a denial that he counseled, hired and commanded, or was concerned in procuring, the dynamiting; and the burden, throughout, was on the Commonwealth to prove his guilt, not on him to disprove it. As was said by Judge GAWTHROP, speaking for this court, in *Com. v. Stewart*, 106 Pa. Superior Ct. 388, 392, 162 A. 344—a prosecution for rape—: "In the present case, on defendant's own testimony, he was in or about the garage at a time sufficiently long for him to have done everything that the witnesses for the prosecution testified that he did. Our conclusion is that on the record made it was not error for the trial judge to omit instructing the jury as to the quantum of proof required to establish an alibi. In our view the defense of an alibi was not in the case and, therefore, the trial judge would have been justified in refusing to instruct the jury on that subject if he had been requested to do so." See also, *Com. v. DePalma*, 268 Pa. 25, 28, 29, 110 A. 756.

2, 3 and 4 [Assignments 2 and 3]—We find no reversible error in the charge of the court respecting its warning as to the caution to be exercised by the jury in convicting the defendant on the uncorroborated testimony

of self-confessed accomplices. The charge of the court in this respect was in accordance with the accepted standards laid down by the Supreme Court. This was followed by an affirmance of defendant's third point, that, the testimony of one accomplice given is not corroboration of the other accomplices; and it was clear throughout the charge that the 'corroboration' required to take the case out of the warning above referred to, related to 'corroboration' from a source outside of Wise and Cooke.

At the beginning of the charge, after stating the substance of Wise's testimony, the court did say, (N.T. p. 208): "Now then Willie Cooke took the stand and he, in a great measure, corroborated the testimony of David Wise ...... Now he corroborates Wise in a number of respects." This, clearly, meant nothing more than that their stories, as respects occurrences that took place when they were together, agreed. It would have been proper for the court to call the jury's attention to any material *disagreement* in their testimony, as to such matters, and it was not improper to point out that their stories were consistent with each other; but this was before the court emphasized in its charge to the jury that they must weigh the testimony very carefully and cautiously for the reason that they, Wise and Cooke, were self-confessed law offenders and co-conspirators in the commission of the crime and actually did blow up the machinery; and the *final* instructions on this point were at the end of the charge, in the affirmance of the defendant's first, second and third points, in which the court emphasized the danger of convicting the defendant on the testimony of Wise and Cooke, unless *their* evidence—that is, the evidence of both of them—was corroborated by testimony of witnesses who were not concerned in the commission of the crime. As a matter of fact, the testimony of Wise and Cooke was corroborated in material particulars by the testimony of Joseph Ciccone, Elwood Brown, Mary

Miller and even the defendant himself. At the conclusion of the court's charge counsel for the defendant did not ask for any instructions to clear up the alleged inconsistency in the charge he now assigns, and took only a general exception to the charge.

5. We have already considered the sufficiency of the evidence.

6. The excerpt from the court's charge on the subject of the testimony of the character witnesses called by defendant [Assignment 4] is not a complete statement of the charge on that matter. The whole of the charge on the subject of good character or reputation cannot be said to have been unfair or prejudicial to the defendant.

7. There is no basis for the suggestion that the charge of the court was contradictory, misleading, prejudicial and inadequate. Nor is there any merit in the other assignments of error, not covered by the statement of questions involved.

The assignments of error are overruled, the judgment is affirmed, and it is ordered that the defendant appear in the court below at such time as may be fixed by that court, and that he be committed until he has complied with the sentence or such part of it as had not been performed when the appeal in this case was made a supersedeas.