Commonwealth *v.* Gusciora, Appellant.

Argued April 12, 1951, Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*Charles E. Kenworthey*, with him *Joseph P. Willson, Otis W. Erisman, Morton Kline* and *Frank F. Truscott*, for appellant.

*C. W. Shattuck*, District Attorney, with him *Robert B. Apple*, Deputy District Attorney, for appellee.

OPINION BY RENO, J., July 19, 1951:

On Sunday, June 11, 1950, between 2 and 9 p. m., a sporting goods store in Kane was entered and five firearms and ammunition were taken from its shelves. Appellant was indicted for (1) burglary, (2) larceny, and (3) receiving stolen property. The second count was quashed; he was acquitted on the third count; and was convicted and sentenced on the first count.

: The evidence upon which the Commonwealth relied, part of which was contributed by defendant's testimony, established that on that Sunday appellant and one Joseph O'Keefe were returning by automobile from St. Louis to their homes in Boston. The automobile had previously been owned by appellant who transferred

its title to O'Keefe shortly before they left Boston. O'Keefe drove the car, appellant having forfeited his driver's license; and appellant and O'Keefe were together throughout the journey, except as hereafter stated. They left Cleveland, Ohio, at about 12:30 p. m., entered Pennsylvania, and travelled on U. S. Route No. 6 to Towanda, Bradford County, where they arrived at about midnight and spent the night, registering at a hotel under fictitious names. Route 6 passes through Kane, McKean County, and Coudersport, Potter County. Appellant testified he did not know the names of the towns through which they passed, although he remembered that at some point they purchased gas at a filling station. During the following morning, while on the highway between Towanda and the New York State line, they were stopped by state police and the Towanda chief of police. They were taken back to Towanda where the automobile and their baggage were searched.

Four suitcases were found in the car; one, Exhibit 6, was standing on the floor of the car back of the driver's seat; and three were in the trunk compartment. Exhibit 6 was opened with a key found in another suitcase, Exhibit 8. Exhibit 6 contained the firearms identified by name, make and serial number as those taken from the Kane store, a quantity of ammunition, 11 pairs of new gloves, and 3 new suits of clothing, bearing price tags and other labels with which suits are displayed for sale. Exhibit 8 contained, inter alia, 3 new suits of clothing and, most significantly, a coat which matched a pair of trousers which was found in Exhibit 15, a suitcase which was admittedly appellant's. The suitcases, Exhibits 6 and 8, the new suits of clothing, and the gloves were identified by a Coudersport merchant as articles which he discovered missing from his store when he opened it for business on Monday morning. In the car were found various

other articles and among them a pair of tweeze pliers, a punch, a screw driver, copper wire, a claw hammer, and a tool described as a "small little jimmy bar." On appellant's person a nail file was discovered.

The evidence connecting appellant with the Kane burglary was circumstantial. No one saw him or O'Keefe enter the store or, for that matter, saw them in Kane. There were no marks or signs on the doors or windows of the store showing a forcible entry. No one saw them enter the Coudersport store, but an attendant at a gas station near Coudersport identified appellant, and testified that he, accompanied by another person, stopped at the gas station and that one of them purchased gas on Sunday evening at about 8:30 p. m. The Coudersport merchant discovered that the front door of his store could be opened with a nail file inserted between the spring lock and the casing. And yet the firearms taken from the Kane store were found in a suitcase standing on the floor of the car behind the front seat in which appellant was riding, and in one of the two suitcases, containing clothing taken from the Coudersport store, appellant's coat was discovered.

Appellant testified that at his mother's request he visited the grave of his brother, who was killed in the late war, and for her took a photograph of, and a piece of sod from, the cemetery plot. This part of his testimony was true. In the car the police found some sod and a camera with films which, when developed, revealed a grave and part of a cemetery. He denied the burglaries, and asserted that he had no knowledge of the stolen goods or their presence in the automobile until O'Keefe was tried for illegal possession of firearms in the Towanda court house where they were offered as exhibits and in which O'Keefe pleaded guilty. He testified that after they checked in the Towanda hotel, O'Keefe left their room and that he did not see him

until the following morning. Appellant carried his own suitcase, Exhibit 15, downstairs, and claimed he did not see the other suitcases until after they had been arrested. He offered no explanation of the presence of his coat in Exhibit 8, although he testified that a coat belonging to him was carried on a hanger in the back of the car. Whether he was referring to the coat allegedly found in Exhibit 8 is not clear. Appellant's theory is that his testimony laid the base for an inference that during the Towanda visit O'Keefe acquired the stolen goods without appellant's knowledge or assistance. O'Keefe was not called as a witness by either side, and appellant's credibility was impeached by the record of a conviction in a Massachusetts court of the crime of receiving stolen goods. The case was submitted to the jury in an eminently fair charge to which no exception was taken.

As stated, the evidence was circumstantial but, in our opinion, sufficient to warrant conviction. True, the stolen articles were carried in O'Keefe's car, driven by him, and it might be inferred, and the jury could have found, that he had sole possession of the stolen goods. But it is simply incredible that, having started from Cleveland with only two suitcases, appellant secured no knowledge of the presence of an added suitcase in the trunk compartment and of another in the car itself. And if the jury believed that appellant's coat was found in a stolen suitcase containing stolen clothing, it formed a firm predicate for a finding that appellant placed it there, with knowledge of its origin and contents, and thereby took the stolen goods into his possession, or shared their possession with O'Keefe. Moreover, according to appellant's testimony, he and O'Keefe were constantly together during the entire trip from Cleveland to Towanda, except for a period during their stay in Towanda, and, since the firearms and the clothing were undoubtedly feloniously taken

from the stores during the afternoon and evening of that Sunday, the jury could find that appellant participated in the crimes, if he did not personally perpetrate them.

The Commonwealth was not required to prove the utter impossibility of appellant's innocence. *Com. v. Meyers,* 154 Pa. Superior Ct. 8, 34 A. 2d 916. A criminal charge is sufficiently proven where circumstantial evidence reasonably and naturally justifies an inference of guilt and is of such volume and quality as to overcome the presumption of innocence and satisfy the jury of defendant's guilt beyond a reasonable doubt. *Com. v. Marino,* 142 Pa. Superior Ct. 327, 16 A. 2d 314. In a series of cases Judge HIRT completely demonstrated that from the fact of possession, acquired soon after a felonious taking, including joint possession, a jury may infer larceny, receiving and even burglary. *Com. v. Joyce,* 159 Pa. Superior Ct. 45, 46 A. 2d 529; *Com. v. Wojdakowski,* 161 Pa. Superior Ct. 250, 53 A. 2d 851; *Com. v. Lehman,* 166 Pa. Superior Ct. 181, 70 A. 2d 404; *Com. v. Thurman,* 167 Pa. Superior Ct. 642, 76 A. 2d 483. See also *Com. v. Edelman,* 162 Pa. Superior Ct. 313, 57 A. 2d 603; *Com. v. O'Hara,* 167 Pa. Superior Ct. 497, 76 A. 2d 462; *Com. v. Kauffman,* 155 Pa. Superior Ct. 347, 38 A. 2d 425. This disposes of appellant's contention that the evidence was not sufficient to support a conviction for burglary.

Nor is there substance to his further complaint that the testimony concerning the Coudersport burglary was improperly admitted. To begin with, that testimony was not admitted to impeach appellant's character or prove his criminal tendencies, as appellant argues. Judge HUBBARD carefully instructed the jury that "The defendant cannot be convicted for one offense simply because he may be guilty of another. Of course, we wish the jury to understand that they should not convict this defendant of the offense in McKean

County, unless they believe him guilty beyond a reasonable doubt, simply because they may believe that he was guilty of an offense in Potter County, but evidently, in the opinion of the Commonwealth, which was acquiesced in by the court, there was a connection between these offenses."

That the two offenses were connected, and connected by the deliberate acts of appellant and O'Keefe, is too clear to admit of doubt. They themselves commingled their loot. They carried the goods stolen at one store in containers stolen at another store and with goods stolen at the second store. Appellant's coat was placed with the stolen property. Thus the two offenses became inextricably intertwined and inseparable, and the two offenses were no longer independent crimes. They were different aspects of the same pattern, and the Commonwealth, upon which rested the duty of disclosing all the circumstances, could not prove the Kane burglary without also and necessarily showing that the fruits of that crime were carried away, indeed concealed, in containers stolen at Coudersport. *Com. v. Brooks*, 355 Pa. 551, 50 A. 2d 325, where the Commonwealth was allowed to show the theft of a revolver with which a murder was committed and an attempted robbery with a revolver stolen from the victim of the murder, because they constituted links in a chain of closely connected crimes. For further illustrative cases, see *Goersen v. Com.*, 99 Pa. 388; *Com. v. Coles*, 265 Pa. 362, 108 A. 826; *Com. v. Bell*, 288 Pa. 29, 135 A. 645; *Com. v. Kline*, 361 Pa. 434, 65 A. 2d 348; *Com. v. Darcy*, 362 Pa. 259, 66 A. 2d 663; *Com. v. Foster*, 364 Pa. 288, 72 A. 2d 279.

As stated, the Coudersport merchant testified, over objection, that after the burglary he discovered that he could open the front door of his store by inserting a nail file between the spring lock and the casing. There was no preliminary proof that the door at the

time of the experiment was in the same condition as on the date of the burglary, although this was not stated as a ground for the objection. Even so, admission of the testimony without proof of a subsisting condition was not prejudicial error. *Thomas, Roberts, Stevenson Co. v. P. & R. Rwy. Co.*, 256 Pa. 549, 100 A. 998. The Commonwealth's case rested principally upon the inference drawable from possession, and evidence of the experiment was not particularly relevant. At all events, the *method* of entering the store was immaterial. Penal Code of June 24, 1939, P. L. 872, §901, 18 P.S. §4901. But its admission could not affect the result of the trial, did not harm appellant, and was not reversible error. *Com. v. Stewart*, 106 Pa. Superior Ct. 388, 162 A. 344; *Com. v. Dudick*, 87 Pa. Superior Ct. 33; *Com. v. Longwell*, 79 Pa. Superior Ct. 68.

Having encountered the same obstacle while unraveling the printed record, we can understand the plight of appellant's distinguished attorney who argued the case here but did not try it below. The suitcases and other articles should have been marked and numbered as exhibits when and as they were identified, without waiting until they were finally offered and received in evidence. Meanwhile they were referred to by color and size, the "dark red suitcase", a "small dark suitcase", the "small suitcase", the "large suitcase", etc. As a result, following the articles through the course of the trial to the point where they are marked as exhibits is a mental hazard. The articles, however, were produced in the jury's presence; it saw them as they were handled, referred and pointed to, by the attorneys and witnesses; it observed that the verbal descriptions corresponded with the exhibited articles. It probably followed them through the trial better by description than by numbers. The tangled *printed* record did not confuse the jury. It did not share the confusion experienced by our former col-

league and us. Appellant did not demonstrate that the unusual method of treating the articles during the trial prejudiced him.

Judgment and sentence affirmed.