Commonwealth *v.* Burdell, Appellant.

44

Argued November 15, 1954. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

E. O. Golden and Edward J. Steiner, with them Armand R. Cingolani, Alexander Unkovic and Kountz, Fry & Meyer, for appellant.

Charles J. Margiotti, Special Prosecutor, with him V. J. Rich, Assistant, and Clark H. Painter, District Attorney, for appellee.

Opinion by Mr. Chief Justice Horace Stern, January 3, 1955:

A petition filed by defendant for the allowance of an appeal from the judgment of the Superior Court (176 Pa. Superior Ct. 219, 107 A. 2d 739) affirming his conviction and sentence on the charge of armed robbery seemed to us to establish a reasonable doubt whether he had had a fair and proper trial and therefore we allowed this appeal.

On the early morning of March 12, 1952, one Saul, a resident of Butler, went, together with three friends, Fratta, Mendocini and Vergili, to a hotel in Pittsburgh, where they indulged in a drinking orgy that apparently continued on during that entire day. In the late evening they started to return to Butler in Saul's automobile, Mendocini driving. The Commonwealth produced evidence to the effect that instead of pursuing a direct route the automobile was driven to a point near Rankin where it was stopped by defendant, Fred Burdell, who was, and for 20 years had been, a policeman and was then in uniform; that defendant asserted that the car had been driven through a stop sign and charged also that the occupants were numbers writers; that he threatened he would confiscate the car but suggested that he would accept a bribe to "fix" the case; that Saul offered him $100 but on defendant's indicating that he wanted more Saul took out his wallet and Fratta extracted from it $2,600 which he handed to defendant; that defendant then ordered them to get out of the district and stay out.

A witness testified that on the morning of the following day, March 13, he saw five men in the Court House in Butler, one of whom was being asked such questions as "Did you find the safe?" and "Did you bring the money?" He claimed to identify one of those

men as Vergili and another as the defendant; the others were unknown.

On the afternoon of March 14, while Saul's wife was in their home in Butler but Saul himself apparently absent, three armed men entered the house. Two of them tore out the telephone, took Mrs. Saul to the upstairs hall, struck her and cut her face. Meanwhile the third man opened the safe which was on the first floor and extracted over $100,000 in cash and bonds. The three then joined a fourth man who had remained outside, entered an automobile and drove away. Mrs. Saul, a few days later, identified defendant from a photograph shown her in the Detective Bureau, and again in person when he was stood up before her, as being one of the men who had been engaged in the robbery and had assaulted her. At first she also identified Vergili, Fratta and Mendocini but subsequently retracted her identification of Vergili and Mendocini. Defendant, Vergili, Fratta and Mendocini were indicted in Allegheny County for the alleged crime committed at Rankin on the evening of March 12, but they have never been tried on that indictment. Defendant alone was indicted and tried in Butler County on charges of armed robbery and assault and battery allegedly committed at the Saul house on March 14. He was found guilty and his conviction and sentence were, as already stated, affirmed by the Superior Court.

There were, in our opinion, several errors committed in the course of the trial which we shall briefly note hereafter, but one of them impresses us as having been particularly flagrant and in itself necessitates the granting of a new trial. We refer to the fact that the court allowed the Commonwealth, under objection, to put in evidence testimony of Saul in regard to the crime allegedly committed by defendant on March 12

of extorting money from him under the threat of confiscating his automobile. One of our most fundamental and prized principles in the administration of criminal law is that a distinct crime, except under certain special circumstances, cannot be given in evidence against a defendant who is being tried for another crime. This is because the fact that a person has committed one offense is not proof that he has committed another and because the effect of such testimony upon a jury is nevertheless bound to create prejudice and an emotional reaction on their part against the defendant. It is held that such evidence is admissible only where the former alleged crime or crimes are of the same nature as the one under trial and indicate a general intent or design on the part of the accused to conduct, for example, a series of similar robberies, or murders, or sex offenses, or poisonings of persons in order to obtain their insurance money, or the like; in other words, the prior criminal act or acts are evidential only if clearly constituting part of a chain, system, composite plan or scheme. This is all so well established that it would be but a work of supererogation to point out the many authorities enunciating these principles; merely as examples may be cited the discussions in such characteristic cases as *Shaffner v. Commonwealth*, 72 Pa. 60, 65; *Commonwealth v. Williams*, 307 Pa. 134, 147, 148, 160 A. 602, 606, 607; *Commonwealth v. Chalfa*, 313 Pa. 175, 177, 178, 169 A. 564, 565; *Commonwealth v. Bardolph*, 326 Pa. 513, 521, 522, 192 A. 916, 921; *Commonwealth v. Strantz*, 328 Pa. 33, 43, 44, 195 A. 75, 81; *Commonwealth v. Petrillo*, 338 Pa. 65, 79, 80, 81, 12 A. 2d 317, 325, 326; *Commonwealth v. Krolak*, 164 Pa. Superior Ct. 288, 290, 64 A. 2d 522, 523, 524; *Commonwealth v. Ransom*, 169 Pa. Superior Ct. 306, 312, 313, 314, 82 A. 2d 547, 549, 550.

Applying the principles thus stated to the present case it is clear that, since the crime alleged to have been committed at Rankin on the evening of March 12 was that of extortion, or the levy of blackmail, while the crime committed in Butler on the afternoon of March 14 was that of armed robbery, the two have no relation to one another for they are wholly dissimilar in nature. In robbery the taking of property is *against the will by means of force or violence,* while in extortion the taking is *with the consent* of the victim, induced, as it may be, by the threat of some exposure or the making of some criminal charge whether false or otherwise: *People v. Peck,* 43 Cal. App. 638, 642, 643, 185 P. 881, 882, 883; *State v. Casto,* 120 Wash. 557, 207 P. 952; *People v. Anderson,* 59 Cal. App. 408, 426, 211 P. 254, 261, 262; *McKeown v. State,* 34 Okla. Cr. 381, 246 P. 659; 77 C.J.S. 447, §1. A person who would be apt to commit the crime of blackmail or extortion is a very different type from the one who would burglarize a house, commit a vicious assault, and rob at the point of a gun. Indeed the Commonwealth, in the present case, evidently realizing that there must be some special basis shown to justify the introduction in the robbery trial of testimony relating to the extortion charge, contends that both crimes were committed as the result of a general plan to obtain Saul's money in one way or another, and that there was a conspiracy entered into between defendant, Fratta, Vergili and Mendocini for that purpose; as phrased by the special prosecutor who represented the Commonwealth, there was "a general conspiracy on the part of Burdell and the three alleged associates of the witness [Saul] to cheat, defraud and steal from the witness," and the robbery was a part of this "general scheme."

It must be immediately apparent that the Commonwealth is hopelessly inconsistent when it makes this contention. For not only has it failed and refused to indict Fratta, Vergili and Mendocini for the robbery but, on the contrary, it has withdrawn the charges against them with the consent of the District Attorney because of its deeming the evidence against them insufficient. Certainly if there *was* the broad conspiracy it claims, including in its scope the robbery of Saul's safe, Vergili, Fratta and Mendocini were equally guilty with the defendant of the perpetration of that robbery whether they actually participated in it or not.* It is hornbook law that a conspirator is criminally responsible for the acts of his co-conspirators which are committed in furtherance of the common design even though he was not present when the acts were committed: *Commonwealth v. Strantz,* 328 Pa. 33, 40, 195 A. 75, 79; 15 C.J.S. 1105, §74. It was said by Chief Justice GIBSON in *Rogers v. Hall,* 4 Watts 359, 361, that "the least degree of concert or collusion between parties to an illegal transaction makes the act of one the act of all." How, then, can the Commonwealth in one breath say that it has withdrawn the charges against these three other persons because of apparently admitted inability to establish a case against them as far as the robbery is concerned, and in another breath contend that it has proved the existence of a conspiracy between the defendant and the other three which included the plot to rob the safe? In fact the testimony does *not* establish the existence of a conspiracy of that range. To prove a criminal conspiracy the evidence must rise above mere suspicion or possibility of guilty collusion: *Ballantine v.*

---

* Incidentally, even Fratta has not been indicted although identified by Mrs. Saul as one of the robbers.

*Cummings,* 220 Pa. 621, 630, 631, 632, 70 A. 546, 550; *Commonwealth v. Benz,* 318 Pa. 465, 467, 468, 178 A. 390, 391; *Commonwealth v. Bardolph,* 326 Pa. 513, 521, 522, 192 A. 916, 920; *Novic v. Fenics,* 337 Pa. 529, 535, 11 A. 2d 871, 874; *Commonwealth v. Goldberg,* 130 Pa. Superior Ct. 252, 261, 196 A. 538, 542. Assuming, arguendo, that the testimony here might be found sufficient to establish that the three men who caroused with Saul at the hotel in Pittsburgh planned among themselves to extort money from him on the journey home to Butler, that Mendocini telephoned to defendant from the hotel to intercept the car enroute (although there is no evidence to that effect), and that in pursuance of such a plot defendant did stop the car, and, by threatening to make a false charge against him, succeeded in obtaining the money from Saul, there is no evidence whatever that any such agreement, scheme or understanding between the parties embraced any design or project to enter Saul's house and rob his safe. It is true that there was the vague and loose testimony of the witness to an alleged conversation on March 13 between defendant and some other person which referred to a safe and to "getting the money," but this was far from establishing any pre-existing agreement or collusion on the part of these "conspirators" for the purpose of effecting an armed robbery. Clearly, therefore, there was no justification for admitting in evidence at defendant's trial the testimony concerning the event that took place two days before at Rankin on the ground that the two alleged crimes formed part of a general scheme, plot or conspiracy.

As previously stated, we are of opinion that there were other errors committed in the course of the trial here under review. The court admitted evidence, through a tape recording, of a conversation between defendant and Vergili while they were both confined

in the State Police barracks at Butler. This conversation did not contain any admissions of guilt by defendant or any matters tending to establish such guilt, but the offer was merely for the purpose of contradicting testimony he had given on cross-examination in regard to purely collateral matters. It is well established that a witness cannot be contradicted on collateral matters to test credibility: *Hester v. The Commonwealth,* 85 Pa. 139, 157; *Commonwealth v. Petrillo,* 341 Pa. 209, 223, 224, 19 A. 2d 288, 295; *Commonwealth v. Truitt,* 369 Pa. 72, 80, 85 A. 2d 425, 429. While it is true that counsel for defendant allowed the tape recording to be admitted the result was undoubtedly damaging to defendant because the conversation was marked by vulgar language which naturally would prejudice the jury against him.

The Commonwealth offered in evidence a photograph of defendant taken several years previously as being the one from which Mrs. Saul originally identified him. It was a Bertillon or police picture and it showed a card or plate attached to his coat lapel with an inscription thereon disclosing that the photograph came from the Allegheny County Detective Bureau. To make the matter worse, the District Attorney and county detectives were allowed to explain that defendant was under arrest "charged with some crime" at the time the picture was taken. Even if there was any proper purpose in the offer of the photograph into evidence it was certainly improper not to delete the matter printed thereon, because the jury would necessarily be prejudiced by disclosure of the fact that defendant had been charged years before with the commission of another crime. It is true that here also defendant's counsel did not object to the introduction of the picture or to the other evidence in connection therewith, but at another trial, and in the absence of such con-

sent by counsel, such errors in the admission of evidence should not be repeated. It may also be noted that a reading of the trial judge's charge to the jury reveals several assumptions of fact not justified by the evidence, as, for example, that the other "conspirators" conveyed information to defendant regarding Saul's safe and its contents; there was no evidence to that effect nor indeed any testimony as to any conversations between them or any of them on any subject whatever.

Because of the improper admission into evidence of the events that allegedly took place at Rankin on the evening of March 12 defendant is entitled to a new trial.

The judgment of the Superior Court is reversed. The conviction and sentence of defendant in the Court of Oyer and Terminer of Butler County and the conviction of the defendant in the Court of Quarter Sessions of Butler County are set aside, and a new trial is granted.