Commonwealth *v.* Williams, Appellant.

Submitted November 13, 1973. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, CERCONE, and SPAETH, JJ. (SPAULDING, J., absent.)

Before SALMON, J.

*James C. Tosh,* and *Luce, Good, Marshall & Tosh,* for appellant.

*Joseph M. Stanichak,* Assistant District Attorney, and *Joseph S. Walko,* District Attorney, for Commonwealth, appellee.

OPINION BY SPAETH, J., April 3, 1974:

The only meritorious issue in this case is whether the court below erred in allowing the Commonwealth to cross-examine appellant about a prior crime.[1] We hold that if there was error, it was harmless beyond a reasonable doubt.

On February 16, 1972, at about 9:45 p.m., Michael Naddour, a seventy-four year old resident of Aliquippa, Pennsylvania, returned to the apartment building in which he lived. He entered the building and began to climb the steps to his apartment on the third floor. He heard someone walking up the steps behind him, but assuming it to be a neighbor, did not turn around. When he reached the second floor landing he was jumped by three youths. Two of them held him down while the third kicked him in the ribs, beat him, and cut his head and face. They took his wallet and left him lying in the hallway, where he was later discovered by a neighbor. His injuries required 65 stitches and two and a half weeks hospitalization. He never got a good look at his assailants because of blood in his eye and because the landing was apparently unlit. His in-court identification was therefore very weak.

---

[1] Appellant also argues that his confession was involuntary. Appellant received a pre-trial hearing on this issue and also raised it at trial. He was disbelieved both times. Without prejudice to appellant's right to seek review under the Post Conviction Hearing Act, Act of January 25, 1966, P. L. 1580 (of 1965), 19 P.S. §1180-1 *et seq.,* we find this issue insubstantial on the record before us.

A little less than an hour after Mr. Naddour had been robbed, John Grazulias left his apartment, which was a few blocks from Mr. Naddour's and on the same street, to get a cup of coffee. Three youths approached him on the sidewalk, jumped him, dragged him into a doorway, smashed his artificial larynx (he is a laryngectomee), held him down, and beat him. When he tried to protect his wallet with his hand he was cut on the thumb and forefinger (an injury that required 17 stitches). His ribs were also damaged. The youths took his wallet and fled, leaving their silenced victim to walk to the police station for help. At the trial he testified that he could not identify any of the persons who robbed him.

On February 26, 1972, two youths got into a taxicab in Aliquippa, and while the one in the back seat held a knife to the driver's throat, the one in the front seat took his wallet. On June 6, 1972, appellant pleaded guilty to larceny in connection with this robbery, the Commonwealth informing the court that it was satisfied that appellant's only part had been to take the driver's wallet, and that it would ask the court to nol pros. charges against appellant of robbery and assault with intent to kill.

On September 13 and 14, 1972, appellant was tried by a jury for the two robberies of February 16. After calling the two victims and the arresting officer, the Commonwealth called Captain Ciccarelli, the investigating officer. He testified that when he had questioned one James Turner in connection with "another case", Turner had implicated himself and appellant in the robberies and had said that appellant had done the cutting. He further testified that when he confronted appellant with this fact, appellant denied Turner's accusation, saying rather that he had held the victims while Turner cut them. Appellant then executed a full statement.

The statement concerned both of the February 16 robberies and also the robbery of the taxi driver on February 26. (The taxi robbery was apparently the "other case" that Turner had been originally questioned about.) When the statement was offered in evidence, on objection by the defense only those portions concerning the February 16 robberies were allowed to be read into the record.

The case for the defense consisted of the testimony of five character witnesses, one of whom was appellant's mother, and of appellant himself.

Each of the character witnesses testified that appellant's reputation for truthfulness (which was the only reputation they were asked about) was good. The Assistant District Attorney did not ask any of them about appellant's plea of guilty to larceny in the taxi driver case except appellant's mother, who said that the persons to whom she had spoken about appellant's reputation had talked about the larceny but that even so appellant's reputation for truthfulness was good.[2]

When appellant testified he was immediately asked on direct examination about the taxi robbery: "BY MR. TOSH [Defense counsel]: Q. Mr. Williams, when you were picked up you were charged with these two offenses and one other offense, is that not correct? A. Yes. Q. This other offense you entered a plea of guilty of larceny on, is that correct? A. Yes.

. . . .

"Q. If you pled guilty to another case, how come you are not pleading guilty in this case or these two cases? A. Because I don't know nothing about them. Q. Why did you tell Ciccarelli or why did you write

---

[2] With respect to such cross-examination, *see Commonwealth v. Little,* 449 Pa. 28, 295 A. 2d 287 (1972); *Commonwealth v. Jenkins,* 413 Pa. 606, 198 A. 2d 497 (1964); *Commonwealth v. Thomas,* 282 Pa. 20, 127 A. 427 (1925).

those statements down? A. Because I was scared." Appellant was also asked about his education (tenth grade) and whether he had ever had his clothes cleaned to remove blood (he said he had not).

In cross-examining appellant the Assistant District Attorney asked about the taxi robbery. When defense counsel objected, the Assistant District Attorney said "[W]e will be able to show . . . the same *modus operandi*. . . . It [the taxi robbery] was a mugging and stabbing and a robbery, and it is close in time and it is the same scheme." The court thereupon overruled defense counsel's objection. After appellant had testified that the "last part" of his confession (which concerned the taxi robbery but which, it will be recalled, had on defense objection been excluded) was true but that the "first part" (which concerned the February 16 robberies) was false, the Assistant District Attorney moved for admisson of the "last part", assigning as his reason not that it showed *modus operandi* but that it impeached appellant's credibility.[3] Over defense counsel's objection, the court allowed the following to be read to the jury: "And on the third time it was just me and Turner. We went to the laundrymat and call a cab. And we got in I got in front. Turner got in the back and he took us on Hill Street and I told the cab driver to stop. And when he stop Turner put the knife around the cab driver throat and the cab started to roll and Turner told me to stop the cab. And by that time Turner had him outside the car and I got out starting

---

[3] "The purpose of offering this, Your Honor, is that if he was so scared allegedly he could write truth part of the time but he is disputing the first part of it and I want to be able to argue that aspect to the jury that it is all germane and that there is a conflict in his own testimony as to what is truthful and what is not, and we feel we have the right to explain that and argue that to the jury."

going in his pocket and then we left, and split the money and went two different ways."

The standard for the admission of evidence of prior crimes is enunciated in *Commonwealth v. Wable,* 382 Pa. 80, 84, 114 A. 2d 334, 336-37 (1955): "[A] distinct crime . . . cannot be given in evidence against a defendant who is being tried for another crime, because the fact of the commission of one offense is not proof of the commission of another. . . . But it is also true that sometimes there exist the 'special circumstances' which operate as exceptions to the general rule, and bring the case within the equally well established principle that evidence of other crimes *is* admissible when it tends to prove a common scheme, plan or design embracing the commission of two or more crimes so related to each other that proof of one tends to prove the others or to establish the identity of the person charged with the commission of the crime on trial,— in other words where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other."

In *Wable* this standard was clearly met. At a trial for the murder of a truck driver, evidence connecting the accused to the murder of two other truck drivers was held admissible. Each of the three drivers had been killed in the early morning while asleep in the cab of his truck parked on the shoulder of a highway; each had been shot in the head from a similar angle; in each case the motive was apparently robbery; and two of the murders had been in Westmoreland County on the Pennsylvania Turnpike, with the third being on a highway in Ohio not many miles away.

There are other cases equally clear. In *Commonwealth v. Gilmore,* 447 Pa. 21, 288 A. 2d 757 (1972), affirming a conviction of felony murder during a robbery, evidence was admitted of three other robberies

within sixteen days of the one on trial, on the same stairwell, always by two men, and all with a razor. In *Commonwealth v. Schmidt*, 452 Pa. 185, 299 A. 2d 254 (1973), affirming a conviction of felony murder during a burglary, evidence was admitted of three other burglaries, all within a ten day period and within the same geographical area, and all involving entry through a broken window in order to steal from a vending machine. In *Commonwealth v. Smith*, 443 Pa. 151, 277 A. 2d 807 (1971), a conviction for murder during the robbery of a motel/gas station was affirmed. It appeared that two gas stations had been held up by the same men, armed with a pistol, one station being held up the night before and the other the night after the incident on trial. The court said: "The circumstances of the two robberies and the Fawber hold-up plainly indicated a common design and *modus operandi* relative to all three happenings. . . . [E]vidence of the clearly interwoven commission of earlier crimes is admissible to show plan, scheme, motive and design. Commonwealth v. Raymond, 412 Pa. 194, 199, 194 A. 2d 150 (1963); Commonwealth v. Burdell, 380 Pa. 43, 47, 110 A. 2d 193 (1955); Commonwealth v. Strantz, 328 Pa. 33, 44, 195 Atl. 75 (1937); cf. Commonwealth v. Coyle, 415 Pa. 379, 388, 203 A. 2d 782 (1964)." *Commonwealth v. Smith, supra*, at 157, 277 A. 2d at 811.

In considering these cases it must be borne in mind that while the crimes need not be progressive stages of a single plot, some "logical connection" between them must appear. Thus in *Commonwealth v. Burdell*, 380 Pa. 43, 110 A. 2d 193 (1955), a conviction for armed robbery and assault and battery was reversed where the Commonwealth had introduced evidence of extortion by the defendant. All the crimes had in common was the victim. Said the court: "[T]he two [crimes] have no relation to one another for they are wholly

dissimilar in nature." *Commonwealth v. Burdell, supra* at 48, 110 A. 2d at 196. Even if the crimes are not "wholly dissimilar" it may be error at the trial of one crime to admit evidence of another crime. *Commonwealth v. Foose*, 441 Pa. 173, 272 A. 2d 452 (1971), is a case in point. There the defendant was being tried for the armed robbery of a tavern during which a gasoline credit card was taken from one of the patrons. The owner of a gas station testified that this card was used by the defendant to purchase gasoline from him and that the defendant had robbed him. Reversing, the court said that although the gas station owner could have testified about the defendant's possession of the card, it was error to permit him to testify about the armed robbery of his station. Although each crime— the one at the tavern and the one at the gas station— was armed robbery, "[T]he record nowhere contains any evidence linking the two robberies and we cannot fathom any direct connection." *Commonwealth v. Foose, supra* at 176, 272 A. 2d at 453.

Of the foregoing cases, the present case is closest to *Commonwealth v. Foose, supra.* The taxi robbery happened ten days after the two robberies for which appellant was on trial. It involved only two assailants, rather than three. The taxi driver was apparently not cut or otherwise seriously injured. Nor does it appear that the robberies were all in the same neighborhood. To be sure, some common elements do appear: each crime was a robbery; in each a knife was used; and in each, according to appellant, it was Turner who used it. These similarities, however, are not nearly so impressive as those in *Commonwealth v. Gilmore, Commonwealth v. Schmidt,* and *Commonwealth v. Smith, supra.*

It follows that if the only reason for cross-examining appellant about the taxi robbery had been to show *modus operandi,* error would have occurred. It is true

that at first this was the only reason assigned by the Assistant District Attorney in support of the cross-examination. Later, however, he supported the examination and the admission of appellant's entire confession on the ground of impeaching appellant's credibility. This was an adequate ground, and distinguishes this case from the usual case involving the admissibility of evidence of a prior crime.

It will be recalled that appellant had in a single statement to the investigating officer confessed to both of the robberies for which he was on trial and to the taxi robbery, and that during the Commonwealth's case the trial judge had excluded any reference to the taxi robbery. This ruling was in accord with *Commonwealth v. Foose,* and *Commonwealth v. Burdell, supra.* Then, however, appellant himself testified about the taxi robbery. Evidently he hoped that if he himself were to tell the jury about the taxi robbery, explaining that as to it he was indeed guilty and had truthfully confessed, the jury would be so impressed that it would decide to believe him when he went on to say that the rest of his confession was false and had been given only because he was "scared."

Appellant cannot adopt a strategy and at the same time preclude the Commonwealth from testing its validity by cross-examination; and the most obvious test, which was the test selected by the Commonwealth, was to ask appellant about that part of the confession that concerned the taxi robbery. Appellant had written his confession himself. As the Assistant District Attorney argued to the trial judge, in opposing defense counsel's objection, if appellant was too scared to tell the truth, and therefore lied, in the first part of his confession (concerning the two robberies for which he was on trial), how was it that he was not also too scared to tell the truth in the last part (concerning the taxi robbery)? Had appellant never mentioned the taxi rob-

bery, the jury would never have learned of it. Having not only mentioned it, but having made it the focus of his defense, he cannot complain now.

The judgment of sentence is affirmed.