347 A.2d 690

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Albert Andrew LASCH, Appellant.**

Supreme Court of Pennsylvania.

Argued March 11, 1975.

Decided Nov. 26, 1975.

574

576

William J. Rundorff, Henry J. Russo, Asst. Public Defenders, Mercer, for appellant.

Joseph J. Nelson, Dist. Atty., R. F. Banks, Asst. Dist. Atty., Mercer, for appellee.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## ORDER

PER CURIAM.

The Court being equally divided, the Order of the Superior Court is affirmed.

EAGEN, J., files an opinion in support of affirmance in which O'BRIEN and POMEROY, JJ., join.

ROBERTS and MANDERINO, JJ., file opinions in support of reversal.

NIX, J., would reverse.

JONES, C. J., did not participate in the consideration or decision of this case.

## OPINION IN SUPPORT OF AFFIRMANCE

EAGEN, Justice.

This case results from a series of burglaries in a rural area of Mercer County in November and December of 1972. The record discloses the following:

On the morning of November 2nd, the caretaker of Ivan Birsic's trailer, which Birsic had placed on his

property adjoining a dirt road approximately one mile from Pennsylvania Route 19 and two miles from the Pennsylvania State Police substation at Mercer, discovered that the gate had been broken by force during the evening or early morning hours. The trailer door was locked, however, and the caretaker had no key, and so it was not until Birsic himself was able to visit the property on November 11th that he learned that all of the furnishings of the trailer had been taken. In order to prevent a recurrence he had a burglar alarm installed which would be activated by the opening of the trailer door. On the night of November 10th–11th an electric saw and a tool box containing tools belonging to John Melhorn were stolen from Melhorn's truck, and during the early morning hours of December 8th a tool box belonging to Glenn Speir and containing specialized tools specifically designed for trailer furnaces was stolen from Speir's truck. On the afternoon of December 18th there was a burglary at the residence of Daniel Gadd in the course of which were stolen—among other items—a television set, a U. S. Coast Guard jacket, an extension cord for a razor, and a watch. In the course of investigating this burglary, Officer William Daley of the Pennsylvania State Police discovered distinctive v-shaped tread marks in the snow which he theorized had been made by the burglar. He also learned that a station wagon with wood panelling had been seen near the Gadd residence on the day of the burglary.

While in his home on the evening of December 28th, the Birsic caretaker heard the burglar alarm recently installed at the nearby trailer go off. The caretaker immediately telephoned the State Police in Mercer and told Officer Edward Lancaster of the incident; while he was on the telephone he saw a dark station wagon coming from the direction of the Birsic trailer pass his house. He told the officer he was going to follow the car and hung up.

Officer Lancaster promptly began to drive toward the Birsic trailer; he soon reached the point on Route 19 where the dirt road which adjoins the Birsic property meets the highway. He there saw a station wagon with wood panelling on the sides and followed closely by another car about to pull off the dirt road onto Route 19. At this point the officer was aware not only that the caretaker was going to follow the suspicious car on this apparently little-used road, but that earlier in the day he had read a notice on the barracks bulletin board indicating that Officer Daley was looking for a station wagon with wood panelling in connection with his burglary investigations. The notice, however, actually described the station wagon with wood panelling as red, a late model, and either a Chrysler or a Plymouth. The station wagon observed by the officer on December 28th was a blue 1968 Mercury.

As the station wagon pulled onto Route 19, Officer Lancaster halted it and was then told by the driver of the second car that he was the caretaker who had just called the State Police. The driver of the station wagon identified himself as Albert Andrew Lasch. However, he was unable to produce a driver's license and admitted that his operating privileges were under suspension in Pennsylvania. Subsequently the officer learned by radioing the barracks that Lasch had had multiple convictions for driving without a license; he therefore arrested Lasch, took him into custody, and had him arraigned for the misdemeanor of driving a motor vehicle more than once while under suspension.

Meanwhile Officer Daley, who had investigated the previous burglary at the Birsic trailer, proceeded to the site of the trailer where he found footprints in the snow and mud, each with a v-shaped tread which seemed identical to what he had seen in the snow at the site of the Gadd burglary. He also discovered that, although the door handle was in a locked position, the door of the

trailer could be popped open by a hard bump with the shoulder and that the burglar alarm would only go off when the door was open. Nothing, however, appeared to be missing. Subsequently the officer advised Lasch of his *Miranda* rights, and the latter stated that he understood them and that he was willing to answer questions. He also gave the officer permission to examine his shoes, which were muddy and had a v-shaped tread matching the footprints discovered that night at the Birsic trailer and previously at the Gadd residence; a search warrant was later obtained for the shoes.

Subsequently warrants were also obtained to search both the station wagon and Lasch's residence. Among the items found in the car were tool boxes and a power saw which Speir and Melhorn respectively identified as those that had been taken from their trucks. The search of Lasch's residence revealed a dining room table, dining room chairs, lamps, pots and pans, and an electric sweeper all subsequently identified as items taken in the first Birsic burglary, and a television set, U. S. Coast Guard jacket, and extension cord for an electric razor each subsequently identified as those taken in the Gadd burglary. In addition, a watch had been stolen from the Gadd home. While Lasch was being fingerprinted, Officer Daley asked to see the watch he was wearing and copied the serial numbers. Although Lasch told the officer that he had purchased the watch from a jewelry store in Sharon, the serial numbers matched those of a watch purchased by Gadd from a jewelry store in Grove City. Subsequently, when Officer Daley asked Lasch for the watch pursuant to a search warrant, the latter insisted that the officer had never returned it to him; the watch was never recovered.

Lasch was indicted on separate bills charging him with burglary, larceny, and receiving stolen goods in connection with, respectively, the Birsic and Gadd residences and the Speir and Melhorn trucks. He was additionally

charged in a fifth bill of indictment with operating a motor vehicle while his Pennsylvania driver's license was under suspension, a misdemeanor because not a first offense.[1] Pursuant to a motion by the district attorney under Rule 219(b) of the Pennsylvania Rules of Criminal Procedure and over the timely objection of Lasch, the trial court consolidated the five indictments into a single trial. Before the consolidated case was submitted to the jury, the judge dismissed the charges of burglary and larceny with regard to Melhorn's truck; subsequently the jury acquitted Lasch of burglary and larceny with regard to Speir's truck. Lasch was ultimately convicted of burglary, larceny, and receiving stolen goods in connection with the Gadd and initial Birsic break-ins, of attempted burglary in connection with the second Birsic break-in, and of receiving stolen goods in connection with both the Melhorn and Speir thefts; in addition, he was convicted of driving while under suspension. He was sentenced to two and a half to six years imprisonment on each of the burglary convictions and to lesser or suspended terms for the other convictions, all sentences to be served concurrently. Lasch filed an appeal in the Superior Court which later affirmed the judgments of sentence in a unanimous per curiam order, 229 Pa.Super. 708, 323 A.2d 251 (1974). This Court then granted allocatur for the limited purpose of passing on the propriety of the consolidation of the various indictments into a single trial.

■■ The general policy of the law is to encourage joinder and consolidation when judicial economy can thereby be effected, especially when the result will be to avoid the expensive and time-consuming duplication of evidence. But this laudable interest in judicial economy must be weighed against the need to minimize the prejudice that can be caused a defendant required to defend

1. Act of April 29, 1959, P.L. 58, as amended, 1972, 75 P.S. § 624 (Supp.1975–1976).

against separate crimes in a single trial. The relevant rules and cases provide standards for the striking of the necessary balance between these sometimes competing judicial interests, but each case must be independently decided on the basis of the inter-relationship of the charges sought to be consolidated or severed and the nature of the evidence available to prove them.

■ Although Pa.R.Crim.P. 219(b) provides on its face only for joinder of separate offenses in a single indictment,[2] this Court has treated it as equally applicable to the consolidation of separate indictments. *Commonwealth v. Moore*, 463 Pa. 317, 344 A.2d 850 (1975); *Commonwealth v. Peterson*, 453 Pa. 187, 307 A.2d 264 (1973). Thus, the first task is to determine whether the separate indictments consolidated for trial in this case could have been joined in a single indictment as provided in Rule 219(b).

■■ There can be no doubt that the five alleged burglaries covered by the four separate burglary indictments constituted offenses of the "same or similar character" as envisoned by the language of Rule 219(b) and which, absent a showing of prejudice to Lasch (appellant), could have been properly consolidated. The charge of driving while under suspension, however, is just as clearly not an offense of the "same or similar character" as burglary, nor do I think that it was based upon the same act or transaction as the burglaries or connected with them as part of a common scheme or plan. Even if the driving charge was technically misconsolidated with the burglary charges, however, such consolidation was in no way prejudicial, and therefore

2. "Two or more offenses, of any grade, other than murder, may be charged in the same indictment if they are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan. There shall be a separate count for each offense charged."

584

harmless. Appellant stipulated at trial that his license was suspended when he was arrested on December 28th, in effect pleading guilty to the charge. Certainly in view of this incontrovertible proof, the burglary evidence could not be said to prejudice him with regard to the driving charge, nor would the driving charge be of the nature likely to prejudice the jury against him with regard to the burglary charges. See *Baker v. United States*, 131 U.S.App.D.C. 7, 401 F.2d 958 (1968), cert. denied, 400 U.S. 965, 91 S.Ct. 367, 27 L.Ed.2d 384 (1970); *State v. Fitzgerald*, 267 Or. 266, 516 P.2d 1280 (1973); cf. *Commonwealth v. Tracey*, 137 Pa.Super. 221, 8 A.2d 622 (1939).

Assuming then that the various indictments might have been consolidated absent significant prejudice to appellant, it remains to be decided whether the consolidation of the burglary indictments was sufficiently prejudicial to require reversal for abuse of judicial discretion, since this Court has held that "the consolidation or separation of indictments is a matter for the trial judge, whose conclusion will be reversed only for a manifest abuse of discretion or prejudice and clear injustice to the defendant." *Commonwealth v. Patrick*, 416 Pa. 437, 445, 206 A.2d 295, 298 (1965).[3]

3. In his dissent in *Commonwealth v. Peterson*, supra, Mr. Justice Roberts, joined by Mr. Justice Nix and Mr. Justice Manderino, has argued, however, that judicial discretion should be limited to "situations where the offenses involved were similar enough to meet the 'other crimes' test, or where such offenses arose out of the same transaction, occurrence, or episode." On the other hand, where the defendant "is charged with . . . separate and distinct offenses, so dissimilar that it would be prejudicial error to admit evidence of one offense at a separate trial of the other," he would follow the American Bar Association Standards Relating to Joinder and Severance and allow the defendant "on timely motion, an absolute right to severance of the offenses." 453 Pa. at 204, 307 A.2d at 273. In contrast, the lead opinion (the present writer, joined by Mr. Chief Justice Jones and Mr. Justice O'Brien) would follow the test of Judge Learned Hand as articulated in *United States v. Lotsch*, 102 F.2d 35 (2d Cir. 1939), cert. denied, 307 U.S. 622, 59 S.Ct. 793, 83 L.Ed. 1500 (1939), and would permit a broader discretion where the offenses charged

As this Court has had occasion to note:

"The cases and treatises have taken special cognizance of three kinds of prejudice that may occur if separate offenses—and particularly those that are merely of 'similar character' and do not arise out of a single transaction—are joined. These are: (1) defendant may become embarrassed or confounded in his defense; (2) the jury may use the evidence of one of the crimes charged to infer a criminal disposition on the part of the defendant from which is found his guilt of the other crime or crimes charged; or (3) the jury may cumulate the evidence of the various crimes charged and find guilt, when, if considered separately, it would not so find." *Commonwealth v. Peterson,* supra 453 Pa. at 194, 307 A.2d at 267.

In this case appellant offered no defense at trial whatsoever and makes no claim that he was in any way embarrassed or confounded in his defense by the consolidation. Cf. *Peterson,* supra at 194–97, 307 A.2d at 267–69. He bases his claim of prejudice, rather, on the second and third type of prejudice enumerated above.

■■ Because proof that a person has committed one crime—or even many crimes—is not in itself proof that he has committed another, and because there is a genuine danger that a jury may use the evidence of a separate crime to find a defendant guilty of the crime of which he is accused when it might not do so if restricted to the evidence of that crime alone, it is a well-established rule of

were separate and distinct and where the evidence was easily separable by the jury. The decisive vote in *Peterson* was that of Mr. Justice Pomeroy, who, in a separate concurrence, did not reach the question of whether the trial court's discretion with regard to consolidation should extend beyond the "other crimes" rule, since he believed that in *Peterson* the evidence was sufficient to suggest a common scheme or plan. See Judge Spaeth's analysis of *Peterson* in *Commonwealth v. Irons,* 230 Pa.Super. 56, 326 A.2d 488 (1974). Clearly, whatever the standard used to determine it, the possibility of prejudice caused to the defendant by the consolidation is what must be examined.

law that ordinarily evidence of other crimes is inadmissible in the trial of a separate crime. See *Commonwealth v. Groce*, 452 Pa. 15, 303 A.2d 917 (1973), cert. denied, 414 U.S. 975, 94 S.Ct. 290, 38 L.Ed.2d 219 (1973) ; *Commonwealth v. Foose*, 441 Pa. 173, 272 A.2d 452 (1971); *Commonwealth v. Burdell*, 380 Pa. 43, 110 A.2d 193 (1955). But although the law is zealous to protect the defendant, who must be presumed innocent of the crime with which he is charged, from prejudgment, it is also concerned that the prosecution not be precluded from introducing legitimate evidence that is relevant to the judgment to be made with regard to the offense actually being tried. Therefore, it is equally well-established that where evidence of other crimes has an independent relevance to the crime being tried—where it tends to prove such elements as motive, intent, absence of mistake or accident, a common scheme, plan or design embracing the commission of two or more crimes so related to each other that proof of one tends to prove the others, or the identity of the person charged with the crime being tried —it is admissible for such limited purpose. *Commonwealth v. Peterson*, supra 453 Pa. at 197–98, 307 A.2d at 269–70.

These considerations are particularly pertinent in cases where multiple offenses are joined or consolidated, especially when they arise out of more than a single, continuous transaction, for there may be a serious danger of the jury convicting on the basis of what appears to be a general criminal disposition rather than upon the evidence actually relevant to each offense, or of a confusion between the evidence relevant to one offense and that necessary to prove another. Nevertheless, if the evidence of each offense to be joined or consolidated is relevant, and therefore admissible, at a separate trial of the other, there is no abuse of discretion in joining or consolidating them, especially if in addition the evidence is not so complex as to present a substantial risk of con-

fusing the jury and if the jury is properly instructed of its relevance. Nor is it necessary that every item of the evidence relevant to one offense be admissible in a separate trial of another for it to be admissible in a joint or consolidated trial, as long as there is adequate concern for the broad need to weigh the interest in judicial economy against the possibility of prejudice to the defendant. See *Bradley v. United States*, 140 U.S.App.D.C. 7, 433 F.2d 1113 (1969). I must therefore first determine whether or not the consolidation of the multiple burglaries in this case satisfied the "other crimes" test for admissibility.

Initially, I note that the two alleged burglaries at the Birsic trailer, that of November 1st or 2nd and that of December 28th, were both covered in a single indictment, and that this Court is here reviewing only appellant's objection to the consolidation of the five separate indictments. Since there is no record of any motion to sever the separate counts of the Birsic indictment, any objection to this joinder has been waived. It is clear, nevertheless, that the two Birsic burglaries satisfy the "other crimes" test. The trial court properly charged that the mere fact that property from the first Birsic burglary was found in the possession of appellant two months later would not in itself be sufficient to create an inference that he was the thief, since the stealing was not sufficiently recent. But appellant's possession, together with the evidence that placed him at the scene of an apparent second burglary or attempted burglary at the trailer, would be sufficient to create such an inference and point toward his identity as the original thief. Similarly, evidence that appellant possessed property stolen during the first burglary would tend to show criminal intent with regard to his presence on December 28th. Cf. *Bradley v. United States*, supra. Alternatively, the evidence linking appellant with two nocturnal burglaries of the *same* trailer on two different occasions when it

was unoccupied within a period of less than two months points toward the existence of a common scheme embracing two crimes so related to each other that proof of one tends to prove the other. See *Commonwealth v. Borschell*, 462 Pa. 605, 342 A.2d 97 (1975) ; *Commonwealth v. Smith*, 443 Pa. 151, 277 A.2d 807 (1971); *Commonwealth v. Wable*, 382 Pa. 80, 114 A.2d 334 (1955). See also *Commonwealth v. Williams*, 227 Pa.Super. 103, 323 A.2d 135 (1974).

The three other burglaries with which appellant was charged all fell within the period separating the two alleged burglaries at the Birsic trailer, between November 1st and December 28th. They all took place within the same general area. Property identified as having been stolen in each of them was discovered in appellant's possession as a result of his arrest after leaving the vicinity of the Birsic trailer on December 28th—property from the Gadd burglary along with the Birsic property in his home, property from the Melhorn and Speir burglaries in the car he was driving on the night he was apprehended. Appellant's possession of property stolen from *all* of these burglaries [4]—closely linked in time and space—is a highly significant factor suggesting, if not a common scheme or design perpetrated by appellant,[5] at least a series of crimes so closely connected that proof of one logically tends to prove each of the others. In *Commonwealth v. Gusciora*, 169 Pa.Super. 27, 82 A.2d 540

[4]. Except, of course, for the one in connection with which he was apprehended after the burglar alarm went off and subsequently found guilty of attempted burglary only.

[5]. It might be argued that, since the burglary of homes covered by the Birsic and Gadd indictments and the burglary of trucks covered by the Melhorn and Speir indictments reveal different *modi operandi,* the evidence points to the existence of not one but two common schemes carried out between November 1st and December 28th. But, given the fact of common possession of goods stolen in all of the earlier burglaries and presence at the scene of the apparent attempted burglary on December 28th, it seems less artificial and more logical to regard the whole as evidence of a single scheme to steal from homes and trusts.

(1951), it was held no error to admit evidence of possession of property stolen in a burglary for which the defendant was not on trial, since by mingling loot from the two burglaries in the car in which he was arrested, he had in effect made the crimes no longer separate and distinct.[6] See also *Commonwealth v. Gallagher*, 200 Pa. Super. 136, 186 A.2d 842 (1962).

██ ██ In this case, the evidence indicated that appellant—charged with burglary, larceny, and criminal receiving in connection with four separate burglaries perpetrated within a two-month period—was in simultaneous possession of goods stolen in each of the burglaries. The task of the jury was to determine whether appellant's possession with regard to each particular charge was innocent or guilty, and if guilty, the nature of that guilt. Possession of stolen property in itself is not sufficient to alter the presumption of innocence or even to create a standardized inference of guilt. *Commonwealth v. Turner*, 456 Pa. 116, 317 A.2d 298 (1974) ; *Commonwealth v. Owens*, 441 Pa. 318, 271 A.2d 230 (1970). Among the factors to be considered are " 'the lapse of time between the crime and the discovery of the property; the type and kind of property; the amount and volume of the property; and the ease in which it may be assimilated into trade channels.' " *Commonwealth v. McFarland*, 452 Pa. 435, 439, 308 A.2d 592, 594 (1973), quoting from *Commonwealth v. Shaffer*, 447 Pa. 91, 109, 288 A.2d 727, 737 (1972). Similarly, evidence that appellant was in possession of property stolen in not just

---

**6.** "Thus the two offenses became inextricably intertwined and inseparable, and the two offenses were no longer independent crimes." 169 Pa.Super. at 33, 82 A.2d at 542. In *Gusciora* it was not significant that different kinds of goods were taken in each burglary, nor is it significant in this case that goods from the household burglaries were found in appellant's house while goods from the truck burglaries were found in the station wagon he was driving. The evidence indicated common possession, and warrants to search both home and car were obtained in conjunction with his arrest on December 28th.

one but several burglaries and comprising several different kinds of goods was relevant not simply to prove a general criminal propensity, but considerably to increase the likelihood of guilt—or absence of mistake—with regard to each separate possession, and therefore admissible in a separate trial of each offense. See *Commonwealth v. Johnson*, 133 Pa. 293, 19 A. 402 (1890); *Kilrow v. Commonwealth*, 89 Pa. 480 (1879); *Commonwealth v. Cohan*, 177 Pa.Super. 532, 111 A.2d 182 (1955); *Commonwealth v. Joyce*, 159 Pa.Super. 45, 46 A.2d 529 (1946). See also 2 Wigmore, Evidence § 325 (3d ed. 1940).[7] Cf. *Peters v. People*, 151 Colo. 35, 376 P.2d 170 (1962). Seen in this light, the false exculpatory statement about the watch would also be significant evidence of guilt with regard to the other possessions as well. In addition, although there was no direct evidence linking appellant to the burglary and larceny of the Melhorn and Speir trucks other than his subsequent posses-

7. Wigmore therein discusses the guilty-intent or absence-of-mistake theory of the relevance of possession of other stolen property as follows:

"The reasoning of this argument . . . is that the recurrence of a like act lessens by each instance the possibility that a given instance could be the result of inadvertence, accident, or other innocent intent. Accordingly, the argument here is that the oftener A is found in possession of stolen goods, the less likely it is that his possession on the occasion charged was innocent. It is not a question of specifically proving Knowledge; it is merely a question of the improbability of an innocent Intent."

As a result, he points out:

"(1) It is immaterial whether in the other instances a *knowing* possession is shown. It is the mere fact of the repeated possession of *other stolen goods that lessens* the chances of innocence. (2) It is immaterial that the other goods were *similar* in kind to those charged, or were received from the same person. On the contrary, the greater the variety of the goods, and of the sources they came from, the more striking the coincidence, and the more difficult to believe that the explanation is an innocent one. (3) It is immaterial whether the other possessions occurred *before or after* the possession charged; it is the multiplication of instances that affects our belief, and not the time of their occurrence,—provided the time is not so distant as to be accountable for on the theory of chance acquisition." [Emphasis in original.]

sion of property stolen from them, evidence tending to establish his identity as the thief of the stolen Birsic and Gadd property found in his possession was relevant circumstantial evidence also of his identity as the thief of the stolen Melhorn and Speir property simultaneously in his possessions.[8] I therefore conclude that the consolidation of the four burglary indictments in this case satisfied the "other crimes" test of admissibility.

 Nevertheless, because of the possibility of prejudice that such consolidation may cause a defendant, I think we must also determine whether the evidence was so complex that there was a substantial risk of the jury becoming confused and improperly cumulating it to convict. On review, however, I do not think we have to confine ourselves to mere speculation about the possibility of prejudice; we can examine the trial record itself. The

8. This included not only the evidence of his presence at the alleged second burglary of the Birsic trailer, but the evidence of the distinctive v-shaped tread marks in the snow at both the Gadd residence and the Birsic trailer which matched the shoes appellant was wearing when he was arrested on the evening of December 28th and pointed both to his identity as the burglar on December 18th and to his criminal intent on December 28th. Cf. *Frazier v. State*, 135 Ind. 38, 34 N.E. 817 (1893). The evidence relating to the car is more tenuous, and some of it is capable of more than one interpretation. A husband and wife who were neighbors of Gadd testified that they saw a late model—1970–1972—red Chrysler or Plymouth station wagon with a wooden stripe in the vicinity of the Gadd residence on the afternoon of the burglary, and the husband further testified that he saw it enter the Gadd driveway. The car that appellant was driving on the evening of December 28th was a station wagon with wood panelling, but it was a blue 1968 Mercury; appellant's employer had acquired it in November and allowed appellant to use it overnight as well as in connection with his work in home improvement. The wife also identified the driver as a man of about appellant's age and wearing an orange cap, although she did not specifically identify appellant; appellant was wearing an orange cap when he was arrested. This evidence is plainly of the sort found to be in itself insufficient to meet the "other crimes" test in *Commonwealth v. Peterson*, supra, 453 Pa. at 198–99, n. 1, 307 A.2d at 270, n. 1. But because of the additional overlapping evidence of the footprints and especially of the multiple possessions of stolen property, it was relevant identification testimony in the consolidated case.

record shows not only that the evidence relating to each offense was relatively simple and direct, but that as far as possible each was presented separately to the jury as if it were a separate case; the judge gave clear instructions as to the elements of each offense. Not only did the judge dismiss the burglary and larceny counts in the Melhorn indictment because of insufficient evidence before submitting the case to the jury, but the jury acquitted appellant of burglary and larceny in connection with the Speir indictment and so found him guilty of receiving only with regard to both Melhorn and Speir. Cf. *Commonwealth ex rel. Chatary v. Nailon*, 416 Pa. 280, 206 A.2d 43 (1965). In addition, it found him guilty of attempted burglary only on December 28th. In view of this, I cannot find that appellant was prejudiced by the consolidation or that his convictions were based on insufficient evidence.

I would affirm the order of the Superior Court.

O'BRIEN and POMEROY, JJ., join in this opinion.

## OPINION IN SUPPORT OF REVERSAL

ROBERTS, Justice.

I would reverse. I continue to adhere to the rule set forth in the American Bar Association Project on Standards for Criminal Justice, Standards Relating to Joinder and Severance, § 2.2:

> "Whenever two or more offenses have been joined for trial solely on the ground that they are of the same or similar character, the defendant shall have a right to severance of the offenses."

See *Commonwealth v. Peterson*, 453 Pa. 187, 202, 307 A. 2d 264, 272 (1973) (Roberts, J., dissenting joined by Nix and Manderino, JJ.). Applying this standard there is no doubt that the trial court erred in consolidating five indictments for trial over appellant's objection.

Even under the standard used in the opinion in support of affirmance, the consolidation of these indictments was error.

As conceded in that opinion "it is a well established rule of law that ordinarily evidence of other crimes is inadmissible in the trial of a separate crime." The evidence of other crimes becomes admissible only when it shows (1) motive, intent, the absence of mistake or accident; (2) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others, or (3) the identity of the person charged with the commission of the crime on trial. See McCormick, Evidence § 190, at 447 (1972). Here the indictments and the evidence supporting each were erroneously believed to show a common scheme.

As Professor McCormick explains, the evidence of other crimes becomes admissible:

"To prove the existence of a larger continuing plan, scheme or conspiracy, of which the present crime on trial is a part.
 . . . . [or]
"To prove other like crimes by the accused so nearly identical in method as to earmark them as the handiwork of the accused. Here much more is demanded than the mere repeated commission of crimes of the same class, such as repeated burglaries or thefts. The device used must be so unusual and distinctive as to be like a signature."

McCormick, supra, at 448–49.

The record here shows neither "a larger continuing plan" nor any "device . . . . so unusual and distinctive . . . like a signature" to justify allowing evidence of any one of the crimes charged to be considered with evidence of the others. Each offense charged here involves an independent transaction. There is not suffi-

cient "intertwining" so that proof of one crime would tend to prove another.

The deluge of evidence offered at the consolidated trial placed the defendant at a great disadvantage. He was not free to give testimony concerning only one of the incidents, trial counsel was saddled with complicated strategic decisions, and there was the danger that jurors would become confused sorting the evidence, using evidence of one crime to convict defendant of the others.

The most desirable rule is that adopted by the ABA. But even if we use the rule advanced in the opinion in support of affirmance, to apply such a loose standard for determining a common scheme makes ineffective our well-established principle that an accused cannot be convicted of one crime on the strength of evidence of other criminal activities.

## OPINION IN SUPPORT OF REVERSAL

MANDERINO, Justice.

I dissent. My position is properly stated by Justice Roberts, in *Commonwealth v. Peterson*, 453 Pa. 187, 204, 307 A.2d 264, 273 (1973) (Roberts, J., dissenting). Whenever a defendant is charged with two or more separate and distinct offenses and evidence of one offense could not be admitted at a separate trial on the other offense, the defendant has an absolute right to severance of the offenses.

Rule 219 states: "Two or more offenses . . . may be charged in the same indictment if . . . on two or more acts or transactions connected together or constituting a common scheme or plan." The opinion in support of affirmance finds both of these requirements. In footnote 5, after stating that different *modi operandi* were used, it reasons that due to the fact of possession of the fruits of all the burglaries by the defendant that there was actually one scheme to burglarize homes and

trucks. I suppose if the defendant was also charged with the burglary of a retail establishment within the same two month period and he was found wearing clothes from that burglary, it would be a single scheme to burglarize homes, trucks and retail establishments. The possibilities are infinite.

Furthermore, here we are speaking of a two month period not a twenty-four hour period as occurred in *Peterson, supra,* and in *Commonwealth v. Smith,* 443 Pa. 151, 277 A.2d 807 (1971). Although *Smith* dealt with the use of other offenses as evidence and not the joinder of indictments, Justice Pomeroy found a common scheme when the three robberies occurred within twenty-four hours and employed the same *modus operandi.* Each of the robberies also involved a gas station.

The opinion in support of affirmance also found that if appellant's possession of the fruits of all of the burglaries did not indicate a common scheme or design, it at least indicated a "series of crimes so closely connected that proof of one logically tends to prove each of the others." For this it relies on *Commonwealth v. Gusciora,* 169 Pa.Super. 27, 82 A.2d 540 (1951), where evidence of possession of property stolen in another burglary for which the defendant was not on trial was admitted on the theory that "the two offenses became inextricably intertwined and inseparable, and the two offenses were no longer independent crimes." *Id.* at 33, 82 A.2d at 542. While it is true that in *Gusciora* the "loot" from the two burglaries was mingled in appellant's car, there was much more. Both burglaries took place within thirty-six hours of each other, both involved retail establishments and the goods from the one store were carried away in containers stolen from the other store. This was the crucial fact. The Court said:

"They were different aspects of the same pattern, and the Commonwealth, upon which rested the duty of disclosing all the circumstances, could not prove the Kane

burglary without also and necessarily showing that the fruits of that crime were carried away, indeed concealed, in containers stolen at Coudersport."
*Id.*

In the present case there is no common design nor are the crimes inextricably intertwined. If they were tried separately, evidence of one would not be admissible to prove the other. Consequently, the possible prejudice to the appellant requires that they be tried separately.