J-S73020-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ARMONI M. JOHNSON | |
| Appellant | No. 2119 MDA 2013 |

Appeal from the Judgment of Sentence of October 21, 2013
In the Court of Common Pleas of Luzerne County
Criminal Division at No.: CP-40-CR-0002713-2011

BEFORE: BOWES, J., WECHT, J., and MUSMANNO, J.

MEMORANDUM BY WECHT, J.: **FILED FEBRUARY 03, 2015**

Armoni M. Johnson appeals his October 21, 2013 judgment of sentence for one count each of aggravated assault, a felony of the first degree, and aggravated assault, a felony of the second degree. **See** 18 Pa.C.S. §§ 2702(a)(1), (4), respectively. Johnson's counsel has filed a petition to withdraw as counsel, together with an **Anders**/**Santiago** brief.[1] We find that Johnson's counsel has not satisfied the **Anders**/**Santiago** requirements. Consequently, we deny counsel's petition to withdraw as counsel and remand for counsel properly to satisfy his constitutional

---

[1] **See Anders v. California**, 386 U.S. 738 (1967); **Commonwealth v. Santiago**, 978 A.2d 349, 361 (Pa. 2009). In **Santiago**, our Supreme Court developed certain rules to ensure compliance with the principles underlying the **Anders** decision. Thus, it is common practice in this Court to refer to briefs filed thereunder as "**Anders**/**Santiago** briefs."

responsibilities as appointed appellate counsel, either by preparing an ***Anders***/***Santiago*** brief that satisfies ***Santiago***'s clear criteria or by filing an advocate's brief on Johnson's behalf.

The trial court has provided the following factual history:

On August 7, 2011, the victim, Justin Barna, was a resident in the Capital Hill Apartments, Mountaintop[,] Pennsylvania. Notes of Testimony ("N.T."), 7/16/2013, at 37. In the past, Justin Barna was a regular user of heroin and had purchased drugs from Johnson, in particular, heroin. ***Id.*** Approximately one week prior to the date of the incident, the victim purchased four (4) bags of heroin from Johnson. ***Id.*** at 38. On August 5, 2011, Johnson contacted the victim and accused him of robbing him of his drugs and informing him that he was coming to his home to retrieve the same. ***Id.*** at 40.

On August 7, 2011, the victim had been with his neighbor, Jeffery Petry, having traveled to a pawn shop in the Wilkes-Barre area and then returning to their respective apartments. On that date, the victim heard a knock at the door. As the victim slightly opened his door, Johnson pushed the door open and commenced stabbing him. ***Id.*** at 43. Johnson repeatedly stabbed the victim in the victim's apartment and again in the hallway causing the victim to fall through his neighbor's, Jeffery Petry's, door. ***Id.*** at 44-45. The victim was transported to the hospital where he spent five (5) days and underwent three (3) separate surgeries. Johnson stabbed the victim in the stomach, under the arm, and in the back. ***Id.*** at 46-47.

The Commonwealth called Jeffery Petry as a witness who was a neighbor of the victim, Justin Barna, at the Capital Hill Apartments. Mr. Petry testified that after the victim left his apartment on August 7, 2011, he heard noises, including a voice saying "You're stabbing me!" ***Id.*** at 22. Mr. Petry did not see any other person other [*sic*] than the victim, he called 911 and gave his statement to the police. He further testified that he observed a knife in his apartment with blood on it. ***Id.*** at 26.

The Commonwealth called [Sergeant] Scott Rozitski from the Wright Township Police Department who testified that when he arrived at the scene on August 7, 2011, he witnessed the victim

standing on the sidewalk holding his stomach. He also described blood on Barna's shirt, blood on the ground near the victim, and the fatty tissue coming out of the wounds that were inflicted. *Id.* at 64. [Sergeant] Rozitski also testified that there were no weapons on the victim and the victim told him that Johnson had stabbed him.

Trial Court Opinion ("T.C.O"), 1/23/2014, at 3-4 (citations and nomenclature modified).

The trial court related the procedural history as follows:

By way of Criminal Information No. 2713 of 2011, the Commonwealth of Pennsylvania brought the following charges against [Johnson]: Count 1—Aggravated Assault 18 Pa.C.S. § 2702(a)(1); Count 2—Criminal Conspiracy 18 Pa.C.S. § 903; Count 3—Burglary 18 Pa.C.S. § 3502(a); Count 4—Aggravated Assault 18 Pa.C.S. § 2702(a)(4); Count 5—Criminal Conspiracy 18 Pa.C.S. § 903.

T.C.O. at 1. On or about August 6, 2012, Johnson tendered a guilty plea. However, in a document entered on October 12, 2012, the trial court granted Johnson's putative request to withdraw his guilty plea.[2] **See** Issue/Lift Capias, 10/12/2012.

Prior to the commencement of trial, the Commonwealth withdrew Count 2 Criminal Conspiracy and Count 5 Criminal Conspiracy. On July 15, 2013, Johnson presented a motion for dismissal pursuant to Pa.R.Crim.P. 600. On that date, the Commonwealth similarly presented a [Pa.R.E. 404(b)] motion seeking to admit specific prior bad acts. Johnson's Rule 600 motion was denied and the Commonwealth's [Rule] 404([b) motion was granted.

---

[2] The certified record contains no written motion to withdraw the prior plea tender.

On Tuesday, July 16, 2013, a jury trial was commenced. At the conclusion of the trial, the jury rendered a verdict as follows: Count 1—Aggravated Assault—Guilty; Count 2—Aggravated Assault—Guilty; Count 3—Burglary—Not Guilty.[3]

On October 11, 2013, the [trial c]ourt sentenced Johnson as follows: Count 1—Aggravated Assault—[a] sixty-six (66)[-] month minimum to a one hundred fifty-six (156)[-]month maximum in a state correctional institut[ion] followed by sixty (60) months['] special probation; Count 2—Aggravated Assault—fifteen (15) months minimum to sixty (60) months maximum concurrent to Count 1.

Thereafter, on October 18, 2013, Johnson filed a Motion to Modify Sentence[,] which was denied by way of Order dated October 21, 2013. Subsequent thereto, Johnson filed a Notice of Appeal on November 13, 2013. On November 14, 2013, the Court entered an order directing Johnson to file a Concise Statement of Errors Complained of on Appeal [pursuant to Pa.R.A.P. 1925(b)]. On December 4, 2013, Johnson filed an Amended Motion to Extend Time for Filing a Concise Statement Pursuant to Pa.R.A.P. 1925. Upon consideration of that motion, the Court granted Johnson ten (10) days after receipt of sentencing/revocation hearing transcript to file his Concise Statement.

T.C.O. at 1-2 (citations and nomenclature modified).[4]

_____

[3]    The trial court's renumbering of the counts as originally charged counts is immaterial to our analysis.

[4]    The trial court entered its order granting Johnson ten additional days to file his Rule 1925(b) statement on December 6, 2013. The ten-day extension was indexed to Johnson's receipt of his sentencing hearing transcript. The record does not disclose when Johnson received that transcript, although the record does indicate that the transcript in question was filed on October 18, 2013, long before Johnson filed his notice of appeal and his motion to extend time to file his Rule 1925(b) statement. Nonetheless, Johnson did not file his Rule 1925(b) statement until January 21, 2014, rendering it potentially untimely. Although our Supreme Court has made clear that failure to file a Rule 1925(b) statement within the time allotted by the trial court constitutes *per se* waiver of all issues on appeal,
*(Footnote Continued Next Page)*

Before this Court, **Anders** counsel sets forth the following potential issues on Johnson's behalf:

I.    Did the Trial Court err as a matter of law or abuse its discretion in failing to dismiss all charges pursuant to Pa.R.C[rim].P. 600[?]

II.   Did the Trial Court err in allowing the Commonwealth to present evidence of prior bad acts[,] of which the probative value is outweighed by [the] prejudicial effect this evidence would have on the minds of the jurors and [which] is irrelevant to the Commonwealth's proof of the case[,] thereby depriving [Johnson] of a fair trial[?]

III.  Did the Trial Court err by instructing the jury on a charge of causing or attempting to cause serious bodily injury, Aggravated Assault[,] wherein the Commonwealth failed to produce a medical expert or sufficient evidence to sustain such an instruction.

*(Footnote Continued)* ————————————

**Commonwealth v. Castillo**, 888 A.2d 775 (Pa. 2005), in the context of direct appeals of criminal convictions, amended Rule 1925 has introduced an efficiency to the equation that is designed to protect a defendant against the failure of counsel to comply with the trial court's Rule 1925(a) order. Specifically, Rule 1925(c) provides that, when an attorney fails to file a Rule 1925(b) statement, the proper remedy is to remand the case for the filing of a Rule 1925(b) statement *nunc pro tunc*. In **Commonwealth v. Burton**, 973 A.2d 428 (Pa. Super. 2009), this Court extended that rule to encompass circumstances when a statement is filed out of time. **Id.** at 433. We further held that under that circumstance, rather than remand for the filing of a new statement, we may decide the appeal "if the trial court had adequate opportunity to prepare an opinion addressing the issues being raised on appeal." **Id.** Such is the case here. Consequently, notwithstanding the lack of sufficient information to determine whether Johnson filed his Rule 1925(b) statement on a timely basis, we will assume that the Rule 1925 statement was timely filed relative to the trial court's contingent extension and will perform the analysis prescribed by **Santiago**.

IV.   Whether the verdict on count one, Aggravated Assault, against the weight of the evidence, that [Johnson] caused or attempted to cause serious bodily injury[?] [*Sic.*]

Brief for Johnson at 1.

Because counsel for Johnson proceeds pursuant to **Anders** and **Santiago**, this Court first must pass upon counsel's petition to withdraw as counsel before reviewing the merits of the issues set forth by counsel. **Commonwealth v. Goodwin**, 928 A.2d 287, 290 (Pa. Super. 2007) (*en banc*). Prior to withdrawing as counsel under **Anders**, counsel must file a brief that meets the requirements established by our Supreme Court in **Santiago**. Pursuant thereto, the brief must provide the following information:

(1)   a summary of the procedural history and facts, with citations to the record;

(2)   reference to anything in the record that counsel believes arguably supports the appeal;

(3)   counsel's conclusion that the appeal is frivolous; and

(4)   counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Commonwealth v. Santiago**, 978 A.2d 349, 361 (Pa. 2009).

Counsel also must provide a copy of the **Anders**/**Santiago** brief to his client with a letter that advises the client of his rights to "(1) retain new counsel to pursue the appeal; (2) proceed *pro se* on appeal; or (3) raise any points that the appellant deems worthy of the court's attention in addition to

the points raised by counsel in the *Anders* brief." *Commonwealth v. Nischan*, 928 A.2d 349, 353 (Pa. Super. 2007); *see Commonwealth v. Daniels*, 999 A.2d 590, 594 (Pa. Super. 2010). Finally, to facilitate our review of counsel's satisfaction of his obligations, he must attach the letter to his petition to withdraw. *See Commonwealth v. Millisock*, 873 A.2d 748, 752 (Pa. Super. 2005).

These requirements are by no means idle, nor may we take them lightly:

> The *McCoy* Court[5] reiterated the basic propositions set forth in *Anders*: (1) that a State's enforcement of its criminal laws must comply with the principle of substantial equality and fair procedure embodied in the Fourteenth Amendment; (2) that under the Sixth Amendment, the indigent have the same right to effective representation by an active advocate as a defendant who can afford to retain counsel; (3) that the principle of substantial equality is not compromised by the fact that an appointed appellate lawyer finds it necessary to file a petition to withdraw because he believes his client's appeal is frivolous; but that (4) **the principle of substantial equality requires that counsel make the same diligent and thorough evaluation of the case as a retained lawyer before concluding that an appeal is frivolous, and that only after such an evaluation has led counsel to the conclusion that the appeal is wholly frivolous is counsel justified in making his petition to withdraw**. *Id.* at 435-37.
>
> The Court then described counsel's role in procedures for withdrawal as follows:
>
>> The appellate lawyer must **master the trial record**, **thoroughly research the law**, and exercise judgment in

---

[5] *See McCoy v. Court of Appeals of Wis., Dist. 1*, 486 U.S. 429 (1988).

identifying the arguments that may be advanced on appeal. In preparing and evaluating the case, and in advising the client as to the prospects for success, **counsel must consistently serve the client's interest to the best of his or her ability**. Only after such an evaluation has led counsel to the conclusion that the appeal is "wholly frivolous" is counsel justified in making a motion to withdraw. This is the central teaching of *Anders*.

*Id.* at 438 (footnote[s] omitted).

The *McCoy* Court followed with a discussion of its statement in *Anders* that a petition to withdraw must be accompanied by "'a brief referring to anything in the record that might arguably support the appeal[,]'" and clarified that such a brief is not expected to serve as a substitute for an advocate's brief on the merits. *Id.* at 439. Rather, the *Anders* brief aims to provide the appellate courts with a means for making two determinations—**whether appointed counsel has fully supported his client's appeal to the best of his ability and whether the appeal is indeed so lacking in merit that counsel should be permitted to withdraw**. *Id.* & n.13.

*Santiago*, 978 A.2d at 355 (citations modified; emphasis added). Recently, this Court observed that the *Anders*/*Santiago* are "stringent, and with good reason. A defendant has a constitutional right to a direct appeal, *see* Pa. Const. Art. [I], § 9, and a constitutional right to counsel for his direct appeal." *Commonwealth v. Orellana*, 86 A.3d 877, 881 (Pa. Super. 2014) (quoting *Commonwealth v. Smith*, 700 A.2d 1301, 1304 (Pa. Super. 1997)).

To this end, we have held that "[a] proper *Anders* brief does not explain why the issues are frivolous and does not develop arguments against the appellant's interests. Rather, the brief articulates the issues in neutral form . . . and concludes that, after a thorough review of the record, the

- 8 -

appeal is wholly frivolous." **Commonwealth v. Wrecks**, 931 A.2d 717, 720 (Pa. Super. 2007). If counsel does not satisfy **Anders**' technical requirements, this Court will deny the petition to withdraw and remand the case with appropriate instructions. **Id.** at 721; **see Commonwealth v. Curry**, 931 A.2d 700 (Pa. Super. 2007) (quoting **Commonwealth v. Thomas**, 511 A.2d 200, 203 (Pa. Super. 1986)) ("If we were to accept a counsel's conclusion that an appeal was wholly frivolous, without more, 'counsel would become the "court" determining the merits of a defendant's appeal.'").

Short of failing to file a brief at all, **Anders** counsel in the instant case could hardly have fallen short of his obligations by a greater margin without a concerted effort to do so.[6] Although counsel has provided a procedural history, he has omitted entirely to provide any account of the underlying facts either in his statement of the case or in connection with his arguments.[7] Furthermore, he has failed to cite the record where called for in

---

[6] Counsel has satisfied **Santiago**'s technical requirements only insofar as he has furnished a petition to withdraw that pays lip service to all of counsel's obligations and attaches counsel's letter to Johnson detailing Johnson's options, and has furnished a brief that is divided into the sections required by our rules of appellate procedure.

[7] This also violates our rules of appellate procedure. **See** Pa.R.A.P. 2117. While it is true that the trial court provided a factual history of the case with citations to the record, counsel's obligations to the client at least require him to affirm in clear terms the fairness, accuracy, and comprehensiveness of the trial court's account. Absent such an assertion, *(Footnote Continued Next Page)*

numerous instances.  *See* Pa.R.A.P. 2119(a)-(c).  Consequently, he has failed to satisfy the first requirement set forth in *Santiago*.

Counsel's discussion of the issues (or lack thereof) is equally unsatisfactory.  In his discussion of the first issue, regarding an alleged violation of Pa.R.Crim.P. 600's one-year time limit for the commencement of trial, counsel does not even provide the content of Rule 600, let alone cite a single case applying that rule.  This is especially notable insofar as Johnson's trial was not conducted until July 17, 2013, nearly two years after Johnson was charged by written complaint for the underlying crimes on or about August 17, 2011. *See* Pa.R.Crim.P. 600(2)(a) ("Trial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed.").  While it may be the case that any of numerous exceptions to the rule might excuse this considerable extension of the governing time limit, it is not for this Court to conduct that analysis in the first instance.  Rather, under *Santiago*, the burden rests with *Anders* counsel to articulate specific bases upon which counsel has concluded that no non-frivolous argument will lie that Johnson's

_(Footnote Continued)_ ─────────────

we cannot glean whether counsel has tested the trial court's characterization of the record and confirmed its validity.

- 10 -

rights under Rule 600, which are constitutional in origin,[8] were not violated in this case.

The second issue asserted by **Anders** counsel concerns the trial court's potential error of law or abuse of discretion in allowing the Commonwealth under Pa.R.E. 404(b) to present evidence of Johnson's prior drug transactions with the victim. Rule 404 generally proscribes the admission of "[e]vidence of a crime, wrong, or other act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1). However, such evidence may be admitted for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." In a criminal case this evidence is admissible only if the probative value of the evidence "outweighs its potential for unfair prejudice." Pa.R.E. 404(b)(2). Nor is this list exhaustive: For example, our Supreme Court has recognized a *res gestae* exception to Rule 404(b)(1) allowing other crimes evidence "when relevant to furnish the context or complete story of the events surrounding a crime." **Commonwealth v. Dillon**, 925 A.2d 131, 137 (Pa. 2007).

---

[8] **See Commonwealth v. Colon**, 87 A.3d 352, 356 (Pa. Super. 2014) (holding that Rule 600 "was adopted to protect defendant's constitutional rights to a speedy trial under the Sixth Amendment [to] the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution" (internal quotation marks omitted)).

We may reverse a trial court's decision admitting such evidence only if the court abuses its discretion by misapplying the law, exercising manifestly unreasonable judgment, or demonstrating partiality, prejudice, bias, or ill will. **Commonwealth v. Kinard**, 95 A.3d 279, 284 (Pa. Super. 2014) (*en banc*). Because the abuse of discretion standard, while limited in word, is relatively imprecise in application, it is fair to say that an issue must be clearly frivolous not to warrant advocacy on behalf of the appellant. This characteristic is amplified in the context of evidentiary rulings, because Rules 401,[9] 403,[10] and 404(b)(2), require the court to weigh the relevance of the evidence and to measure its probative value against its potential to create unfair prejudice.

In this case, counsel's two-paragraph discussion of this issue does no more than recite Rule 404(b)'s general standard and one case that reaffirms its principles, without any discussion of the substance of that case or its relevance to this one. **See** Brief for Johnson at 8 (citing **Commonwealth v. Lasch**, 347 A.2d 690, 696 (Pa. 1975) (providing that "where evidence of

---

[9] Evidence is relevant when "it has any tendency to make a fact more or less probable than it would be without the evidence" and it "is of consequence in determining the action." Pa.R.E. 401.

[10] "The court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

other crimes has an independent relevance to the crime being tried—where it tends to prove such elements as motive, intent, absence of mistake or accident, a common scheme, plan or design embracing the commission of two or more crimes so related to each other that proof of one tends to prove the others, or the identity of the person charged with the crime being tried—it is admissible for such limited purpose.")).[11] Counsel makes no effort to establish why the evidence unequivocally was relevant or how it fit Rule 404(b)(2)'s requirement that such evidence be admitted only when it tends to establish "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Furthermore, counsel does not even cite, let alone discuss, why the evidence's probative value "outweigh[ed] its potential for unfair prejudice." **See** Pa.R.E. 404(b)(2). This is particularly germane insofar as Pennsylvania's adoption of that qualification is at variance with Federal Rule of Evidence 404(b)(2), which contains no such requirement. **See** Pa.R.E. 404 cmt. Once again, it may be that counsel is absolutely correct that no non-frivolous argument will

_____

[11]    Notably, **Lasch** was decided over twenty years before Pennsylvania adopted its first codified rules of evidence in 1998. Although it remains relevant to those rules, which largely were crafted to embody extant common law, **see Commonwealth v. Minich**, 4 A.3d 1063, 1072 (Pa. Super. 2010) ("The codification of the Pennsylvania Rules of Evidence was never intended by our Supreme Court to change existing law."), in citing an older case counsel overlooked any number of more analogous cases decided by Pennsylvania courts after the rules' introduction.

lie concerning the evidence in question, but it is not our responsibility to figure out why in the first instance.

The third issue raised by **Anders** counsel concerns the prospect that the trial court erred in instructing the jury regarding the legal standard for aggravated assault. Rather than dwell upon the inadequacy of counsel's treatment of this subject, we will simply observe that counsel cites no relevant case law, does not provide the trial court's jury charge or contextualize it relative to the trial evidence, and provides no other indication that he closely measured this case against the applicable law. Counsel offers only the proposed argument that "the Commonwealth failed to produce medical evidence sufficient to sustain a conviction" and rejects it summarily: "[U]pon review of relevant authority, there is no requirement that medical evidence is necessary to convict a defendant of [a]ggravated [a]ssault." Brief for Johnson at 9. In so doing, counsel crosses the line from providing neutral comment on the issue and asserting frivolity, a violation of his obligations. **See Wrecks**, *supra*. Only by conjecture may we even formulate an account of how this question might arise in the instant case. Again, counsel may be absolutely right, but it is his obligation to provide authority to establish that fact in the first instance, not ours.

The same basic deficiencies are evident in counsel's discussion of the fourth and final issue. In connection with that issue, counsel cites only a portion of the governing standard and, without elaboration or citation to the

record and governing case law, asserts his belief that "this issue is frivolous and without merit." Brief for Johnson at 10.

We appreciate, as we must, the quandary faced by court-appointed counsel—*i.e.*, counsel who, unlike privately-retained counsel, has little discretion to decline to accept an appointment to avoid pressing frivolous issues—when confronted with a case in which no arguably meritorious appellate issue may be found. It is precisely this dilemma that underlay the United States Supreme Court's decisions in **Anders** and **McCoy**, *inter alia*, and our Supreme Court's decision in **Santiago**. But as set forth above, the constitutional dimensions of the rights to direct appeal and to the assistance of counsel in connection with that right to appeal preclude us from merely taking counsel's word for it. Rather, counsel has an obligation to review the entire record scrupulously, identify any potentially meritorious issues, and, should he determine that no such issues can be found, explain for this Court's consideration and with some case-specific detail and resort to governing law **why** he has so concluded. When he fails to do so, his obligations have not been discharged and we may not allow counsel to withdraw. For the foregoing reasons, we must deny counsel's petition to withdraw as counsel.

During the pendency of this appeal, Johnson filed several documents that we now address. First, on September 11, 2014, Johnson filed a

response to **Anders** counsel's petition to withdraw. Therein, he asked that this Court remand his case for a **Grazier** hearing[12] to establish that he wished to proceed *pro se*. After conducting a hearing, the trial court informed this Court that Johnson did not wish to proceed *pro se*. However, in Johnson's September 11, 2014 response to counsel's **Anders**/**Santiago** brief, he reasserted his desire to do so as a response to various failings of **Anders** counsel in seeking to withdraw.

In the same September 11, 2014 filing, as well as in a colorfully-named November 19, 2014 "Petition of Confusion," which we docketed as a petition for relief, Johnson makes various assertions to the effect that counsel and/or the trial court mischaracterized the record. Notably, therein he asserted that certain issues he asked **Anders** counsel to consider had not been addressed in counsel's **Anders** brief. He also cast aspersions upon **Anders** counsel's integrity and advocacy on Johnson's behalf.

On December 29, 2014, Johnson filed what we docketed as a second petition for relief, which he entitled "Potential Issue of Sentence." Therein, he asserts, *inter alia*, that the trial court erroneously supplanted its own fact-finding for that of the jury's when it imposed a deadly weapon sentence enhancement. In support, he cites **Apprendi v. New Jersey**, 530 U.S. 466 (2000), and **Jones v. United States**, 526 U.S. 227 (1999), both of which,

---

[12] **See Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1988).

- 16 -

among others, address the issue of when factual findings underlying a sentencing enhancement must be made by a jury rather than by the trial court.

In light of the fact that we must remand this case to allow *Anders* counsel to correct the deficiencies in his prior submissions in this Court, we need not dispose of these petitions and the claims contained therein. Rather, in reviewing this case on remand, it will be incumbent upon counsel to consider rigorously and in a manner favorable to Johnson's interest whether any of these issues merit discussion, whether in an advocate's brief or in a new, technically and substantively adequate *Anders*/*Santiago* brief. We have been clear herein, as we have been in many cases before, what this requires of counsel, and we are confident that counsel will satisfy his obligations in this and all other regards moving forward.

We need not deny Johnson's September 11, 2014 response to counsel's *Anders*/*Santiago* brief, as such, because it is consistent with *Anders* and *Santiago* that Johnson be afforded the opportunity to furnish such a response. However, we will deny Johnson's November 19, 2014 and December 29, 2014 petitions for relief without prejudice to counsel to present any or all of the issues raised therein in connection with his future filings in this matter.

For the foregoing reasons, we remand this case for further proceedings without prejudice to counsel's prerogative, upon due analysis and with sufficient explanation, to proceed again before this Court pursuant to

*Anders* and *Santiago* consistently with the above analysis or to file an advocate's brief on Johnson's behalf.

Petition to withdraw denied. November 19, 2014 and December 29, 2014 petitions for relief denied without prejudice. Case remanded with direction that *Anders* counsel file either an *Anders*/*Santiago* brief or an advocate's brief within sixty (60) days of the date of this memorandum. Jurisdiction retained.